**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

FILED
SEP - 8 2026
CLERK OF COURT
BY ____ DEP. CLERK

IN RE: BANKRUPTCY NO. 26-13385-djb
ANGELA SANDRA FANELLI, : CHAPTER 13
Debtor.

**Answer to Motion for Relief**

**Answer to SN Servicing Corporation, as Servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust, Motion for Relief from Stay.**

1-26. DENIED

Angela Fanelli, Pro Se Debtor
5981 Atkinson Road
New Hope, PA 18938-5301
Phone: (215) 262-6302
Email: mfici@comcast.net
Date: September 4th 2026

**Certificate of Service**

I certify that on __________, 2026, I served a true and correct copy of the foregoing Answer to Motion upon:

Kenneth E. West, Chapter 13 StandingTrustee

190 N. Independence Mall West
Suite 701
Philadelphia, PA 19106

by depositing the same in the United States Mail, first-class postage prepaid.

Angela Fanelli, Pro Se Debtor
Phone: (215) 262-6302
Email: mfici@comcast.net
Date: September 4th 2026

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Debtor | CASE NO.: 26-13385-djb<br><br>CHAPTER 13 |
| Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli<br>Co-Debtor | Judge: Derek J Baker<br><br>Hearing Date: October 1, 2026, at 11:00 A.M. |
| SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust<br>v.<br>Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli<br>Kenneth E. West - Trustee<br>Respondents | Objection Deadline: September 8, 2026 |

**NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY AND CO-DEBTOR STAY AND IN REM/PROSPECTIVE RELIEF**

**PLEASE TAKE NOTICE,** that SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust (on behalf of itself and together with any successor and/or assign "Movant"), filed a Motion for Relief from the Automatic Stay and Co-Debtor Stay and In Rem/Prospective Relief pursuant to 11 U.S.C. § 362(d)(2) and (d)(4), for in rem relief from the automatic stay with respect to the real property 5981 Atkinson Road, New Hope, PA 18938; pursuant to 11 U.S.C. § 362; vacating the automatic stay to permit Movant, its successors and/or assigns, to enforce its mortgage on the Debtor's premises; vacating the co-debtor stay in effect pursuant to 11 U.S.C. § 1301(a).

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult an attorney.)**

1. If you do not want the court to grant the relief sought in the motion or if you want the court to consider your views on the motion, then on or before September 8, 2026, you or your attorney must do all of the following:

(a) file an answer explaining your position at

United States Bankruptcy Court
Eastern District of Pennsylvania
900 Market Street
Robert N.C. Nix Sr. Federal Courthouse
Philadelphia, PA 19107

If you mail your answer to the bankruptcy clerk's office for filing, you must mail it early enough so that it will be received on or before the date stated above; and

(b) mail a copy to the Movant's attorney:

Lauren M. Moyer
Friedman Vartolo, LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
Phone: (212) 471-5100
Fax: (212) 471-5150
Bankruptcy@FriedmanVartolo.com

2. If you or your attorney do not take the steps described in paragraphs 1(a) and 1(b) above and attend the hearing, the Court may enter an order granting the relief requested in the motion.

3. A hearing on the motion is scheduled to be held before the Honorable Judge Derek J Baker at 900 Market Street, Robert N.C. Nix Sr. Federal Courthouse, Philadelphia, PA 19107 on October 1, 2026, at 11:00 am unless otherwise ordered by the Court.

4. If a copy of the motion is not enclosed, a copy of the motion will be provided to you if you request a copy from the attorney named in paragraph 1(b).

5. You may contact the Bankruptcy Clerk's office at (215) 408-2830 to find out whether the hearing has been canceled because no one filed an answer.

Dated: August 25, 2026

By: /s/ Lauren M. Moyer
Lauren M. Moyer, Esq.
**FRIEDMAN VARTOLO LLP**
Attorneys for SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Bankruptcy@FriedmanVartolo.com

TO:

Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli
5981 Atkinson Road
New Hope, PA 18938
Bankruptcy Pro Se Debtor

Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli
5981 Atkinson Road
New Hope, PA 18938
Bankruptcy Co-Debtor

Kenneth E. West
1234 Market Street , Suite 1813
Philadelphia, PA 19107
Bankruptcy Trustee

United States Trustee
Robert N.C. Nix Federal Building - Suite 320, 900 Market Street
Philadelphia, PA 19107
United States Trustee

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Debtor | CASE NO.: 26-13385-djb<br><br>CHAPTER 13 |
| | Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli<br>Co-Debtor | Judge: Derek J Baker<br><br>Hearing Date: October 1, 2026, at 11:00 A.M. |
| | SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust<br>v.<br>Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli<br>Kenneth E. West<br>Respondents | Objection Deadline: September 8, 2026 |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY, AND CO-DEBTOR STAY AND IN REM/PROSPECTIVE RELIEF WITH RESPECT TO PROPERTY**

SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust (together with any successor and/or assign, "Movant") hereby moves this Court for an Order (i) pursuant to 11 U.S.C. § 362(d)(4), for in rem relief from the automatic stay with respect to the real property 5981 Atkinson Road, New Hope, PA 18938; pursuant to 11 U.S.C. § 362; vacating the automatic stay to permit Movant, its successors and/or assigns, to enforce its mortgage on the Debtor's premises; vacating the co-debtor stay in effect pursuant to 11 U.S.C. § 1301(a) and (ii) for such other and further relief as is just and proper. In support of this Motion, Movant respectfully states:

1. Movant is the holder of a Note executed by, Co-Debtor, Andrew T. Fanelli dated October 31, 2005, whereby the Co-Debtor promised to repay $1,820,000.00 plus interest to Wachovia Mortgage Corporation (the "Original Lender"). To secure the repayment of the Note, Co-Debtor, Andrew Fanelli, and Debtor, Angela Fanelli executed a Mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Wachovia, its successors and assigns, encumbering the Property commonly known as 5981 Atkinson Road, New Hope, PA 18938, which Mortgage was recorded in the Official records of Bucks County at Book 4720, Page 942 (hereinafter "Mortgage"). Other than liens with statutory priority, Movant's mortgage is in first lien position. The Mortgage was ultimately assigned to Movant by an Assignment of Mortgage. A copy of the Note, Mortgage and Assignments of Mortgage are attached hereto as **Exhibit "A"**.

2. A Petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to Debtor on August 12, 2026.

3. This Court has jurisdiction over this case and this motion pursuant to 28 U.S.C. §§ 157 and 1334.

4. Venue of this case and this motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. Debtor has filed a total of five (5) bankruptcies and the Co-Debtor has filed a total of one (1) bankruptcies since inception of the loan. More specifically:

| **Debtor Name** | **Case Number** | **Foreclosure Status** | **Date Bankruptcy Filed** | **Case Dismissal Date and Reason** | **Date of Canceled Foreclosure Sale, if applicable** |
|---|---|---|---|---|---|
| **Andrew T. Fanelli** | **16-13411-jkf Chapter 11** | **Active** | **05/12/2016** | **01/23/2017; Failure to File Monthly Operating Reports** | **FC Litigation** |

| | | | | | |
|---|---|---|---|---|---|
| **Angela S. Fanelli** | **18-28838-KCF Chapter 13** | **Active** | **09/21/2018** | **02/19/2019; Failure to Make Plan Payments; failure to file a feasible plan; failure to attend Confirmation hearing; lack of prosecution; failure to resolve Trustee and/or Creditor objection(s)** | **FC Litigation** |
| **Angela S. Fanelli** | **19-11130-AMC Chapter 13** | **Active** | **02/24/2019** | **05/28/2019; Trustee Determined Ineligible for Chapter 13** | **FC Litigation** |
| **Angela S. Fanelli** | **24-11226-djb** | **Active** | **04/11/2024** | **03/07/2025; Debtor Ineligible for Chapter 13** | **04/12/2024** |
| **Angela S. Fanelli** | **25-11840-djb** | **Active** | **05/09/2025** | **11/21/2025; Debtor Ineligible for Chapter 13** | **05/09/2025** |
| **Angela Sandra Fanelli, *pro se*** | **26-13385-djb** | **Active** | **08/12/2026** | **Active** | **08/14/2026** |

A copy of the prior Dismissal Orders are attached hereto as **Exhibit "B."**

6. Debtor has failed to make current mortgage payments due to Movant under the terms of the Loan. As a result, the Loan remains contractually due for July 1, 2016, and each subsequent payment thereafter.

7. Consequently, a foreclosure action was commenced in the Court of Common Pleas of Bucks County on October 20, 2015 under Case Number 2015-07310. A copy of the foreclosure docket report is attached hereto as **Exhibit "C"**.

8. Judgment was obtained under the foreclosure action on via Order for Summary Judgment dated January 25, 2021. Damages were thereafter reassessed and entered on March 7,

2023. A copy of the Judgment Orders are attached hereto as **Exhibit "D"**.

9. Additionally, in each of Debtor's prior three Bankruptcy filings (19-11130-AMC; 24-11226-djb; and 25-11840-djb), it was determined that the claims filed exceeded the Chapter 13 debt limits. The most recent assertion was made on September 23, 2025, in the Trustee's Motion to Dismiss filed in Debtor's prior case 25-11840-djb. Moreover, in Debtor's prior case 24-11226-djb, Debtor unsuccessfully attempted to convert the matter to a Chapter 11 case; however, the case was instead dismissed. Copies of the Trustee's Motion to Dismiss in 25-11840-djb; and the Debtor's Motion to Convert in 24-11226-djb are attached hereto as **Exhibit "E."** Debtor's habitual filing of Chapter 13 bankruptcies while knowingly ineligible is further evidence of bad faith.

10. Additionally, upon information and belief, Debtor has failed to make tax payments on the Property and remains outstanding in the approximate amount of $141,261.00. Copies of outstanding property/school tax totals are attached hereto as **Exhibit "F."**

11. Per 11 U.S.C. 362(d)(4) of the United States Bankruptcy Code, the court may grant Relief from Stay upon finding multiple bankruptcy filings affecting such real property that take part in a scheme to delay, hinder, or defraud creditors.

12. Movant may be irreparably harmed by any further filings of the Debtor due to the number of previous unsuccessful, repetitive filings.

13. The proof of claim related to the real property mortgage in the First Bankruptcy Case (16-13411-jkf) reflected arrears of $ 305,575.78 and a total claim amount of $2,053,163.57.

14. The proof of claim related to the real property mortgage in the Second Case (18-28838-KCF) reflected arrears of $703,033.19 and the total amount of the claim is $2,337,321.86.

15. The proof of claim related to the real property mortgage in the Third Case (19-

11130-AMC) reflected arrears of $766,288.01 and the total amount of the claim is $2,398,987.32.

16. The proof of claim related to the real property mortgage in the Fourth Case (24-11226-djb) reflected arrears of $1,758,456.48 and the total amount of the claim is $3,063,861.82. Additionally, Creditor had filed a Motion for *in rem* Relief in the Fourth Case and resolved via Stipulation; however, the Bankruptcy was dismissed before relief was ultimately obtained. A copy of the *In Rem* Stipulation is attached hereto as **Exhibit "G."**

17. The proof of claim related to the real property mortgage in the Fifth Case (25-11840-djb) reflected arrears of $1,807,951.10 and the total amount of the claim is $3,082,723.90. Additionally, Creditor again filed a Motion for *in rem* Relief in the Fifth Case and was resolved; however, the Bankruptcy was again dismissed before Debtor signed the Settlement Stipulation and before relief was ultimately obtained.

18. The proof of claim related to the real property mortgage in the instant matter is anticipated to have arrears of $3,244,131.99 and a total claim of $2,009,177.39.

19. Pursuant to 11 U.S.C. § 362(d)(1), the court shall enter an order granting a secured creditor relief from the automatic stay for cause "including the lack of adequate protection of an interest in property of such party and interest."

20. Specifically, courts have found cause for the granting of relief from an automatic stay where the debtor has failed to make post-petition mortgage payments as they become due. *In Re Taylor*, 151 B.R. 646, 648 (Bankr. E.D.N.Y. 1993).

21. Relief pursuant to 11 U.S.C. § 362(d)(2) is also appropriate due to the lack of equity in the Property. The Debtor's outstanding amount of the obligations to Movant, less any partial payments or suspense balance, is approximately $3,027,657.28 as of April 22, 2024.

22. According to a Broker's Price Opinion, dated July 29, 2025, the Property has a value of $2,750,000. Thus, here is negligible equity remaining in the Property, and it is not necessary for effective reorganization of the Debtor; and any remaining equity is being eroded by the continued default. See Broker's Price Opinion attached hereto as **Exhibit "H."**

23. Movant is requesting attorney's fees in the amount of $1,650.00 and filing costs of $199.00 in connection with filing and prosecuting of this motion for relief and seeks recovery of those amounts in order to cure the post-petition default.

24. Since grounds exist to vacate the stay in Debtor's case, Movant therefore requests that the automatic stay imposed under 11 U.S.C. § 362(a) be modified and terminated for cause to permit Movant to pursue its rights under the Mortgage and applicable law, including without limitation, the commencement and consummation of a foreclosure action and/or eviction proceeding.

25. Movant may be harmed by the continuation of the Co-Debtor stay absent payments from the Debtor or Co-Debtors. Accordingly, the Co-Debtor stay should be modified pursuant to 11 U.S.C. § 1301(c)(3) and Movant should be permitted to proceed against the Co-Debtor Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli.

26. Upon execution and entry of the Order granting the relief requested, the requirements specified in both (1) Fed. R. Bankr. P. 3002.1 (b) regarding Notice of Mortgage Payment Changes and (2) Fed. R. Bankr. P. 3002.1 (c) regarding Notice of Post-petition Mortgage Fees, Expenses and Charges are hereby waived, or made inapplicable, during the pendency of the within bankruptcy case.

**WHEREFORE**, Movant respectfully requests an Order of this Court vacating the automatic stay for cause pursuant to 11 U.S.C. § 362, 11 U.S.C. § 1301 and for In Rem/Prospective Relief from the Automatic Stay as set forth in the proposed order together with waiver of Bankruptcy Rule 4001(a)(3) and for such other, further and different relief as to this Court may deem just, proper and equitable.

Dated: August 25, 2026

By: /s/ Lauren M. Moyer
Lauren M. Moyer, Esq.
**FRIEDMAN VARTOLO LLP**
Attorneys for SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Bankruptcy@FriedmanVartolo.com

# Exhibit “A”

# FIXED/ADJUSTABLE RATE NOTE

**(LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)**

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October 31, 2005 KING OF PRUSSIA PENNSYLVANIA
[City] [State]

5981 ATKINSON ROAD NEW HOPE, PA 18938
[Property Address]

[redacted]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,820,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is WACHOVIA MORTGAGE CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest a yearly rate of 6.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and aft any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on January 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1100 CORPORATE CENTER DRIVE RALEIGH, NC 27607-5066 or at a different place if required by the Note Holder.



AJ

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 11503.64 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of December , 2015, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One Fourth percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.



AJ

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest .

I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.



AJ

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without



AJ

FANELLI

Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

.................................................. (Seal)
ANDREW T FANELLI -Borrower

.................................................. (Seal)
-Borrower

.................................................. (Seal)
-Borrower

.................................................. (Seal)
-Borrower

[Sign Original Only]

PAY TO THE ORDER OF

WACHOVIA BANK, NATIONAL ASSOCIATION

WITHOUT RECOURSE
WACHOVIA MORTGAGE CORPORATION

BY: ______________________
Assistant Vice President
KAREN DAVIS

PAY TO THE ORDER OF

______________________

WITHOUT RECOURSE
WACHOVIA BANK, NATIONAL ASSOCIATION

BY: ______________________
Assistant Vice President
KAREN DAVIS



AJ

PAY TO THE ORDER OF

WITHOUT RECOURSE
WACHOVIA BANK NATIONAL ASSOCIATION
BY
Assistant Vice President
KAREN DAVIS

PAY TO THE ORDER OF
WACHOVIA BANK NATIONAL ASSOCIATION

WITHOUT RECOURSE
WACHOVIA MORTGAGE CORPORATION
BY
Assistant Vice President
KAREN DAVIS

# ADDENDUM TO NOTE FOR INTEREST ONLY PAYMENTS

THIS ADDENDUM TO NOTE FOR INTEREST ONLY PAYMENTS is made this **31st** day of **October**, **2005**, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower„), in favor of **WACHOVIA MORTGAGE CORPORATION** ("Lender„) and dated the same date as this Addendum (the "Note„). The Note is secured by a security instrument, as modified or amended, in favor of Lender dated the **31st** day of **October**, **2005** (the "Security Instrument„).

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows :

**A. PAYMENTS:** Section 3 (A) and Section 3(B) of the Nde are amended as follows:

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment evry month. This payment will be for interest only for the first **120** months, and thereafter will consist of principal and interest.

I will make my monthly payment on the first day of each month beginning on **January 1**, **2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest it will be applied to interest before principal. If, on **December 1**, **2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date.„

I will make my monthly payments at **1100 CORPORATE CENTER DRIVE RALEIGH, NC 27607-5066** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **9,858.33**. This amount may change.

**B. INTEREST RATE AND MONTHLY PAYMENT CHANGES:** Section 4 (C) of the Note is amended as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate byadding **Two and One Fourth** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment, which during the first __120__ months of my loan will be the interest on the amounts actually outstanding and unpaid on the first day of the preceding month at my new interest rate, and thereafter will consist of principal and interest in an amount sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**C. BORROWER'S FAILURE TO PAY AS REQUIRED:** Section 7(A) of the Note is amended as follows and Section 7(F) is appended:

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of __15__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of interest or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(F) Termination of Interest Only Payments**

Upon default, the Note Holder, at its option, may require me to immediately begin making payments of principal and interest as stated in Sections 3 and 4 of the Note and in an amount sufficient to pay the outstanding balance in full on the stated Maturity Date. If the Note Holder elects this option, the Note Holder will deliver or mail a written notice to me of the new monthly payment at least 30 days prior to the due date of the new monthly payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| ______ (Seal)<br>ANDREW T FANELLI - Borrower | ______ (Seal)<br>-Borrower |
| ______ (Seal)<br>- Borrower | ______ (Seal)<br>-Borrower |
| ______ (Seal) | ______ (Seal) |

*[Sign Original Only]*

**BUCKS COUNTY RECORDER OF DEEDS**
**55 East Court Street**
**Doylestown, Pennsylvania 18901**
**(215) 348-6209**

**Instrument Number - 2005151822**
**Recorded On 11/21/2005 At 10:21:47 AM** ***Total Pages - 22**
***Instrument Type - MORTGAGE - CORPORATIONS**
**Invoice Number - [redacted] User - NMS**
***Mortgagor - FANELLI, ANDREW**
***Mortgagee - WACHOVIA MTG CORP**
***Customer - FIRST AMERICAN TITLE INS CO / ED SLIKER**
***FEES**

| | |
|---|---|
| RECORDING FEES | $80.50 |
| TOTAL | $80.50 |

**This is a certification page**

**DO NOT DETACH**

**This page is now part of this legal document.**

**RETURN DOCUMENT TO:**
**FIRST AMERICAN TITLE INS CO / ED SLIKER**

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Bucks County, Pennsylvania.

THE RECORDERS OFFICE OF BUCKS COUNTY, PA.

Edward R. Gudknecht
Recorder of Deeds

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

[redacted]

**Book: 4720 Page: 942**

PLEASE RECORD AND RETURN TO
First American Title Insurance Company
472 California Road
Quakertown, PA 18951

[redacted]

Prepared By:
ANITA F. JACOBS
WACHOVIA MORTGAGE CORPORATION
1410 COMMONWEALTH DRIVE
WILMINGTON, NC 28403
888-846-9071

Return To:
WACHOVIA MORTGAGE CORPORATION
1100 CORPORATE CENTER DRIVE - NC4723
RALEIGH, NC 27607-5066
877-731-3199

Parcel Number: [redacted]

[redacted]
FANELLI

[Space Above This Line For Recording Data]

# MORTGAGE

MIN [redacted]

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **October 31 2005** ,
together with all Riders to this document.
(B) **"Borrower"** is
**ANDREW FANELLI**

**ANGELA FANELLI** **HUSBAND AND WIFE**

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee**

**under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is **WACHOVIA MORTGAGE CORPORATION**

Lender is a **CORPORATION**
organized and existing under the laws of **NORTH CAROLINA**
Lender's address is **1100 CORPORATE CENTER DRIVE**

**RALEIGH, NC 27607-5066**

**(E) "Note"** means the promissory note signed by Borrower and dated **October 31 2005**.
The Note states that Borrower owes Lender
**One Million Eight Hundred Twenty Thousand and no/100** Dollars
(U.S. $ **1,820,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1 2035**.
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

FANELLI

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the **COUNTY** [Type of Recording Jurisdiction] of **BUCKS** [Name of Recording Jurisdiction]:

**SEE ATTACHED LEGAL**

which currently has the address of **5981 ATKINSON ROAD** [Street]
**NEW HOPE** [City], Pennsylvania **18938** [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

[redacted]
FANELLI

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more

Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of

insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance.claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to

prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments

toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as ) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

[redacted]
FANELLI

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

[redacted]
FANELLI

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited

[redacted]
FANELLI

to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental

Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

[redacted]
FANELLI

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________ (Seal)
ANDREW T FANELLI -Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
ANGELA S FANELLI -Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

_______________________ (Seal)
-Borrower

[redacted]
FANELLI

**Certificate of Residence**

I, , do hereby certify that the correct address of the within-named Mortgagee is

Witness my hand this 31st day of October, 2005.

Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,** Bucks **County ss:**

On this, the 31st day of October 2005 before me, the undersigned officer, personally appeared

Andrew P. Fanelli and Angela S. Fanelli.

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

Title of Officer

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Joy Abbot Inkpen, Notary Public
Richland Twp., Bucks County
My Commission Expires Dec. 18, 2008
Member, Pennsylvania Association Of Notaries

[redacted]



Form 3039 1/01
AJ

Order No: [redacted]

EXHIBIT 'A'

ALL THAT CERTAIN lot, tract or parcel of land, situate, lying & being in the Township of Solebury, County of Bucks, & Commonwealth of Penna. being known & designated as Lot #5, as shown on a Plan of Aintree Subdivisions Numbered 2-552, Sheet 1 of 1, prepared by Christian & Moran, Inc., Engineers & Surveyors, Langhorne, Penna., dated 10/25/1979, revised 4/29/1980, recorded in the Office for the Recording of Deeds etc, in Doylestown, Penna. in Plan Book 196 page 4 & being more particularly bounded & described as follows, to wit:

BEGINNING at a point in the centerline of Atkinson Road (33 feet wide), said point being the 3 following courses & distances measured along the said centerline from its intersection with the centerline of Pidcock Creek Road (33 feet wide), (A) North 59 degrees 34 minutes 01 seconds West 279.86 feet, (b) South 72 degrees 26 minutes 53 seconds West 330.85 feet, (c) South 46 degrees 22 minutes 41 seconds West 523.77 feet, and from said point of beginning running thence (1) South 46 degrees 22 minutes 41 seconds West 476.46 feet along the said centerline of Atkinson Road to a point, thence (2) North 51 degrees 16 minutes 24 seconds West 892.10 feet along the Northeasterly line of Lot #10 as shown on the aforesaid plan to a point, thence (3) continuing by Lot #10, North 38 degrees 50 minutes 00 seconds East 472.22 feet to a point in line of Lot #4 on said plan, thence (4) by Lot #4, South 51 degrees 16 minutes 24 seconds East 954.66 feet to the centerline of Atkinson Road to the first mentioned point & place of Beginning.

CONTAINING 10,0100 Acres of land, more or less.

BEING Lot #5 as shown on the above-mentioned Plan.

COUNTY TAX PARCEL [redacted]

BEING THE SAME PREMISES which Deluca Enterprises, Inc., A Pennsylvania Corporation, by Indenture dated 10-12-89 and recorded 10-24-89 in the Office of the Recorder of Deeds in and for the County of Bucks in Deed Book 107 Page 1628, granted and conveyed unto Andrew Fanelli and Angela Fanelli, his wife, as tenants by the entireties.

**BUCKS COUNTY RECORDER OF DEEDS**
55 East Court Street
Doylestown, Pennsylvania 18901
(215) 348-6209

Instrument Number - 2012027023
Recorded On 4/4/2012 At 2:49:34 PM
* Instrument Type - MORTGAGE ASSIGNMENT
Invoice Number - [redacted] User - KGB
* Mortgagor - WACHOVIA MTG CORP
* Mortgagee - WELLS FARGO BK N A
* Customer - WELLS FARGO BANK N A
* FEES

| | |
|---|---|
| RECORDING FEES | $54.50 |
| TOTAL PAID | $54.50 |

* Total Pages - 3

This is a certification page

**DO NOT DETACH**

This page is now part of this legal document.

COPY

RETURN DOCUMENT TO:
WELLS FARGO BANK N A

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Bucks County, Pennsylvania.

THE RECORDERS OFFICE OF BUCKS COUNTY, PA.

Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

[redacted]

Book: 6987 Page: 1231

When Recorded Return To:
DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

RECEIVED NOTE 12:48 BUCKS COUNTY RECORDER OF DEEDS

RECEIVED
2012 MAR 15 A 10:00
BUCKS COUNTY
RECORDER OF DEEDS

B.C.R.

Parcel No. [redacted]

[redacted]

**CORPORATE ASSIGNMENT OF MORTGAGE**

**Bucks, Pennsylvania**
**"FANELLI"**
**SELLER'S LENDER ID#: 022**

**MERS #:** [redacted] **SIS #:** [redacted]

Date of Assignment: March 12th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
Assignee: WELLS FARGO BANK, NA

I hereby certify the precise address of the within named Assignor is BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL 61834.

I hereby certify the precise address of the within named Assignee is 1 HOME CAMPUS, DES MOINES, IA 50328.

COPY

Executed By: ANDREW FANELLI ANGELA FANELLI HUSBAND AND WIFE To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 10/31/2005 Recorded: 11/21/2005 as Instrument/Document: 2005151822 In the County of Bucks, State of Pennsylvania.
5981 ATKINSON ROAD, NEW HOPE, PA 18938 in the Township of SOLEBURY

I do certify that the precise address of WELLS FARGO BANK, NA is 1 HOME CAMPUS, DES MOINES, IA 50328
Attested By: *William Barkman*
5981 ATKINSON ROAD, NEW HOPE, PA 18938 in the Township of SOLEBURY

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $1,820,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the Security Instrument.

[redacted]

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
On 3-13-12

By: [signature]
Scott Heckens
_, Assistant Secretary

STATE OF Minnesota
COUNTY OF Dakota

On 3-13-12, before me, Bradly J. Harry, a Notary Public in Dakota County in the State of Minnesota, personally appeared Scott Heckens, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[signature]
Bradly J. Harry
Notary Expires: 1/31/16

BRADLY JAMES HARRY
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2016

(This area for notarial seal)

[redacted]

**BUCKS COUNTY RECORDER OF DEEDS**
**55 East Court Street**
**Doylestown, Pennsylvania 18901**
**(215) 348-6209**

Instrument Number - 2018045178
Recorded On 8/16/2018 At 2:39:20 PM
* Total Pages - 2
* Instrument Type - MORTGAGE ASSIGNMENT
Invoice Number - [redacted] User - KGB
* Mortgagor - WELLS FARGO BK N A
* Mortgagee - U S BK TR N A
* Customer - WELLS FARGO BANK, N.A.
* FEES

| | |
|---|---|
| RECORDING FEES | $70.75 |
| TOTAL PAID | $70.75 |

Bucks County UPI Certification
On August 16, 2018 By SHY

This is a certification page

**DO NOT DETACH**

This page is now part of this legal document.

COPY

RETURN DOCUMENT TO:
WELLS FARGO BANK, N.A.

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Bucks County, Pennsylvania.

THE RECORDERS OFFICE OF BUCKS COUNTY, PA

Robin M. Robinson

Robin M. Robinson
Recorder of Deeds

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

[redacted]

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD
SUITE 200
EAGAN, MN 55121

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
[redacted] SOLEBURY TWP
CERTIFIED 08/16/2018 BY SHY

WHEN RECORDED MAIL TO:
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC:[redacted]
EAGAN, MN 55121-4400
ATTN: ASSIGNMENT TEAM

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A., 1 HOME CAMPUS, DES MOINES, IA 50328**, by these presents does convey, assign, transfer and set over to: **US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR BLUEWATER INVESTMENT TRUST 2017-1, 2121 ROSECRANS AVE., EL SEGUNDO, CA 90245**, the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$1820000.00** is recorded in the State of **PENNSYLVANIA**, County of **Bucks** Official Records, dated **10/31/2005** and recorded on **11/21/2005**, as Instrument No. **2005151822** in Book No. **4720**, at Page No. **942**

Original Mortgagor: **ANDREW FANELLI ANGELA FANELLI HUSBAND AND WIFE**

Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**

Property Address: **5981 ATKINSON ROAD NEW HOPE, PA 18938**

PIN #: [redacted]

Date: **08/16/2018**

COPY

WELLS FARGO BANK, N.A.
By:

WISSALL KIM, Vice President Loan Documentation

STATE OF MN
COUNTY OF Dakota } s.s.

On **08/16/2018** before me, **DEREJE D. BADADA**, a Notary Public, personally appeared **WISSALL KIM, Vice President Loan Documentation** of **WELLS FARGO BANK, N.A.** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

DEREJE D. BADADA, Notary Public
Commission #: 31049021
My Commission Expires: 01/31/2022

DEREJE D BADADA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 1/31/22

I do certify that the precise address of **US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR BLUEWATER INVESTMENT TRUST 2017-1** is **2121 ROSECRANS AVE., EL SEGUNDO, CA 90245**

Attested By:

WISSALL KIM, Vice President Loan Documentation

[redacted]

**BUCKS COUNTY RECORDER OF DEEDS**
**55 East Court Street**
**Doylestown, Pennsylvania 18901**
**(215) 348-6209**

Instrument Number - 2018068021
Recorded On 12/12/2018 At 9:09:45 AM * Total Pages - 4
* Instrument Type - MORTGAGE ASSIGNMENT
Invoice Number - [redacted] User - SMC
* Mortgagor - U S BK TR N A
* Mortgagee - U S BK TR N A
* Customer - SIMPLIFILE LC E-RECORDING
* FEES

| | |
|---|---|
| RECORDING FEES | $73.75 |
| TOTAL PAID | $73.75 |

Bucks County UPI Certification
On December 12, 2018 By TF

This is a certification page

**DO NOT DETACH**

**This page is now part of this legal document.**

COPY

**RETURN DOCUMENT TO:**
**MERIDIAN ASSET SERVICES - API**
**3201 34TH ST S STE 310**
**ST PETERSBURG, FL 33711**

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Bucks County, Pennsylvania.

THE RECORDERS OFFICE OF BUCKS COUNTY, PA

Robin M. Robinson

Robin M. Robinson
Recorder of Deeds

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

[redacted]

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
41-035-008--005 - SOLEBURY TWP
CERTIFIED 12/12/2018 BY TF

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

UPI[redacted]

Space above for Recorder's use

Loan No[redacted]
Svcr Ln No[redacted]

[redacted]

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR BLUEWATER INVESTMENT TRUST 2017-1**, whose address is **2121 ROSECRANS AVE, EL SEGUNDO, CA 90245**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **10/31/2005**
Original Loan Amount: **$1,820,000.00**
Executed by (Borrower(s)): **ANDREW FANELLI & ANGELA FANELLI**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: **2005151822** in the Recording District of **BUCKS, PA**, Recorded on **11/21/2005**.
**MUNICIPALITY: TOWNSHIP OF SOLEBURY**

Property more commonly described as: **5981 ATKINSON ROAD, NEW HOPE, PENNSYLVANIA 18938**

[redacted]

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: November 19, 2018

**U.S. BANK TRUST NATIONAL ASSOCIATION, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR BLUEWATER INVESTMENT TRUST 2017-1, BY BLUEWATER INVESTMENT HOLDINGS, LLC, ITS ADMINISTRATOR, BY BLUEWATER SM LLC, ITS SPECIAL MEMBER, BY ATHENE ASSET MANAGEMENT LLC, ITS SOLE MEMBER**

By: Luke Scolastico
Title: Vice President
Structured Investments

Witness Name: PETER DEVONSHIRE

I hereby certify the precise address of the within named **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE BUNGALOW SERIES III TRUST** (*Assignee*) *is* **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251.**

COPY

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of ________
County of ________

On ________________ before me, ________________, a Notary Public, personally appeared ________________, ________________ of/for **ATHENE ASSET MANAGEMENT LLC, AS SOLE MEMBER OF BLUEWATER SM LLC, AS SPECIAL MEMBER OF BLUEWATER INVESTMENT HOLDINGS, LLC, AS ADMINISTRATOR OF U.S. BANK TRUST NATIONAL ASSOCIATION, NOT INDIVIDUALLY BUT SOLELY AS TRUSTEE FOR BLUEWATER INVESTMENT TRUST 2017-1**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of ________ that the foregoing paragraph is true and correct. I further certify ________________________, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

________________________

(Notary Name): ________________
My commission expires: ________________

[redacted]

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles )

On November 14, 2018 before me, Tamara Thérèse Johnson - Notary Public,
*Date* *Here Insert Name and Title of the Officer*

personally appeared Luke Scolastico
*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

TAMARA THERESE JOHNSON
Notary Public - California
Los Angeles County
Commission # 2249882
My Comm. Expires Jul 14, 2022

Signature [signature]
*Signature of Notary Public*

*Place Notary Seal Above*

***OPTIONAL***

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ______ Document Date: ______

Number of Pages: ______ Signer(s) Other Than Named Above: ______

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: ______
☐ Corporate Officer — Title(s): ______
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ______
Signer Is Representing: ______

Signer's Name: ______
☐ Corporate Officer — Title(s): ______
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ______
Signer Is Representing: ______

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

**BUCKS COUNTY RECORDER OF DEEDS**
**55 East Court Street**
**Doylestown, Pennsylvania 18901**
**(215) 348-6209**

Instrument Number - 2018068022
Recorded On 12/12/2018 At 9:09:46 AM * Total Pages - 3
* Instrument Type - MORTGAGE ASSIGNMENT
Invoice Number - [redacted] User - SMC
* Mortgagor - U S BK TR N A
* Mortgagee - U S BK TR N A
* Customer - SIMPLIFILE LC E-RECORDING
* FEES

| | |
|---|---|
| RECORDING FEES | $71.75 |
| TOTAL PAID | $71.75 |

Bucks County UPI Certification
On December 12, 2018 By TF

This is a certification page

**DO NOT DETACH**

This page is now part
of this legal document.

COPY

**RETURN DOCUMENT TO:**
MERIDIAN ASSET SERVICES - API
3201 34TH ST S STE 310
ST PETERSBURG, FL 33711

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

THE RECORDERS OFFICE OF BUCKS COUNTY, PA.

Robin M. Robinson

Robin M. Robinson
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

[redacted]

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
[redacted] - SOLEBURY TWP
CERTIFIED 12/12/2018 BY TF

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

UPI# [redacted]

Space above for Recorder's use

Loan No [redacted]
Svcr Ln No: [redacted]

[redacted]

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**. (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE CABANA SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE)**, its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **10/31/2005**
Original Loan Amount: **$1,820,000.00**
Executed by (Borrower(s)): **ANDREW FANELLI & ANGELA FANELLI**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: 2005151832 in the Recording District of **BUCKS, PA**, Recorded on **11/21/2005**.
**MUNICIPALITY: TOWNSHIP OF SOLEBURY**

Property more commonly described as: **5981 ATKINSON ROAD, NEW HOPE, PENNSYLVANIA 18938**

[redacted]

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: DEC 0 7 2018

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: JOSEPH DAY
Title: VICE PRESIDENT

Witness Name: MAGED FARAG

I hereby certify the precise address of the within named **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE CABANA SERIES III TRUST** (*Assignee*) is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251.**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT.

State of FLORIDA
County of PINELLAS

On DEC 0 7 2018, before me, **JULIE ARENCIBIA**, a Notary Public, personally appeared **JOSEPH DAY, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify JOSEPH DAY, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **JULIE ARENCIBIA**
My commission expires: 7/18/2022

JULIE ARENCIBIA
Commission # GG 187907
Expires July 18, 2022
Bonded Thru Budget Notary Services

[redacted]

# Exhibit "B"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| ANDREW T. FANELLI | Case No. 16-13411 (JKF) |
| Debtor. | |

**ORDER OF DISMISSAL WITH A BAR AND JUDGEMENT**

AND NOW, to wit, this 23 day of January, 2017, in consideration of the Acting United States Trustee's Motion to Dismiss, and upon the consent of the Debtor, and for the reasons stated on the record, it is

ORDERED, that the Motion is GRANTED, and that this case is dismissed pursuant to 11 U.S.C. § 1112(b) with a bar against filing for six months from the date of the entry of this Order without first obtaining leave of Court.

AND ORDERED that this Court's prior Order awarding fees to McElroy, Deutsch, Mulvaney & Carpenter, LLP shall survive and remain enforceable, and in connection therewith, this Court retains jurisdiction for purposes of enforcement of same.

IT IS FURTHER ADJUDGED that the Debtor is indebted to the United States

Trustee in the sum of $1,625.00 for outstanding quarterly fees pursuant to 28 U.S.C. § 1930(a)(6).

BY THE COURT:

Honorable Jean K. FitzSimon
United States Bankruptcy Judge

| UNITED STATES BANKRUPTCY COURT<br>District of New Jersey | |
|---|---|
| Albert Russo<br>CN 4853<br>Trenton, NJ 08650<br>(609) 587-6888<br>Standing Chapter 13 Trustee | Order Filed on February 19, 2019<br>by Clerk<br>U.S. Bankruptcy Court<br>District of New Jersey |
| In re:<br><br>Angela S. Fanelli<br><br>Debtor(s) | Case No.: 18-28838 / KCF<br><br>Chapter: 13<br><br>Hearing Date: February 13, 2019<br><br>Judge: Kathryn C. Ferguson |

**CHAPTER 13 STANDING TRUSTEE PRE-CONFIRMATION ORDER OF DISMISSAL**

The relief set forth on the following page is **ORDERED**.

**DATED: February 19, 2019**

Honorable Kathryn C. Ferguson
United States Bankruptcy Judge



*rev. 5/8/17*

The Court having determined that dismissal of this case is appropriate, it is hereby

ORDERED that the debtor's case is dismissed for:

- failure to file a feasible plan, income and/or budget statement
- failure to make all required pre-confirmation payments to the Trustee
- lack of prosecution
- failure to attend Confirmation Hearing
- failure to resolve Trustee and/or creditor objection

and it is further

ORDERED that:

Pursuant to 11 U.S.C. § 349(b), this court for cause retains jurisdiction over any application filed within 14 days of the date of this order by any administrative claimant for funds on hand with the Chapter 13 Standing Trustee.

Any funds held by the Chapter 13 Standing Trustee from payments made on account of the debtor's plan shall be disbursed to the debtor, less any applicable trustee fees and commissions, except any adequate protection payments due under the proposed plan, or by Court order.

Any *Order to Employer to Pay the Chapter 13 Trustee* that has been entered in this case is vacated, and the employer is ordered to cease wage withholding immediately.

All outstanding fees due to the Court are due and owing and must be paid within 7 days of the date of this order.

Form 148 – ntcdsmcs

**UNITED STATES BANKRUPTCY COURT**

District of New Jersey
402 East State Street
Trenton, NJ 08608

Case No.: 18–28838–KCF
Chapter: 13
Judge: Kathryn C. Ferguson

In Re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Angela S. Fanelli
5981 Atkinson Road
New Hope, PA 18938

Social Security No.:
xxx–xx–0411

Employer's Tax I.D. No.:

**NOTICE OF ORDER DISMISSING CASE**

NOTICE IS HEREBY GIVEN that an Order Dismissing the above captioned Case was entered on 2/19/19.

Any discharge which was granted in this case is vacated. All outstanding fees to the Court incurred by the dismissed debtor(s) are due and owing and must be paid within five (5) days from the date of this Order.

Dated: February 19, 2019
JAN: slf

Jeanne Naughton
Clerk

**UNITED STATES BANKRUTPCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANGELA FANELLI — Chapter 13

Debtor — Bankruptcy No. 19-11130-AMC

**Order Dismissing Chapter 13 Case and**
**Directing Counsel to File Master Mailing List**

**AND NOW**, this ____________ day of ___________________, 201_, upon consideration of the Motion to Dismiss filed by William C. Miller, standing trustee, this case is dismissed and it is further ORDERED, that counsel for the debtor, shall file a master mailing list with the clerk of the Bankruptcy Court, currently updated (if such has not been previously filed); and it is further

**ORDERED**, that any wage orders are hereby vacated.

_______________________________
Ashely M. Chan
Bankruptcy Judge

William C. Miller, Trustee
P.O. Box 1229
Philadelphia, PA 19105

Debtor's Attorney:
JEFFREY D SERVIN ESQUIRE
1800 JFK BOULEVARD
SUITE #300
PHILA.,, PA 19103-

Debtor:
ANGELA FANELLI

5981 ATKINSON ROAD

NEW HOPE, PA 18938

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | ANGELA FANELLI | : | CHAPTER 13 |
| | | : | |
| | | : | |
| | DEBTOR | : | BANKRUPTCY No. 24-11226DJB |

ORDER DISMISSING CHAPTER 13 CASE AND SETTING DEADLINE FOR APPLICATIONS FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES

AND NOW, consideration of the Motion to Dismiss Case filed by Kenneth E. West, Standing Trustee ("the Trustee"), and after notice and hearing, it is hereby ORDERED that:

1. This chapter 13 bankruptcy case is DISMISSED.

2. Counsel for the Debtor shall file a master mailing list with the Clerk of the Bankruptcy Court if such has not been previously filed.

3. Any wage orders previously entered are VACATED.

4. Pursuant to 11 U.S.C. §349(b)(3), the undistributed chapter 13 plan payments in the possession of the Trustee shall not revest in the entity in which such property was vested immediately before the commencement of the case. All other property of the estate shall revest pursuant to 11 U.S.C. §349(b)(3).

5. All applications for allowance of administrative expenses (including applications for allowance of professional fees) shall be filed within twenty (20) days of the entry of this Order.

6. **Promptly after the expiration of the time period set forth in Paragraph 5 above, Counsel for the Debtor shall file either**: (a) a Certification of No Response confirming that neither an objection to the proposed compensation nor an application for administrative expense has been filed or (b) a Certification that an objection or an application has been filed (after which the Clerk shall schedule a hearing on all such applications).

7. If no Certification, as required above in Paragraph 6 has been entered on the docket within sixty three (63) days of the entry of this Order, then the Standing Trustee shall: (a) if any applications for administrative expenses other than Debtor(s)' Counsel's have been filed, request a hearing thereon or, (b) if no such applications have been filed, return the undistributed chapter 13 plan payments in his possession to Debtor(s) pursuant to 11 U.S.C. §1326 (a)(2).

BY THE COURT:

________________________________
THE HONORABLE DEREK J. BAKER

Dated:______________

**Date: March 17, 2025**

# Exhibit "C"

**Supreme Court of Pennsylvania**

**Court of Common Pleas**
**Civil Cover Sheet**
**BUCKS County**

60

S

| For Prothonotary Use Only: |
|---|
| Docket No: |

Case #: 2015-07310 B09 11016449
Code: 60 Judge:26
Patricia L. Bachtle, Bucks County Prothonotary
Rcpt: 2015-22-03554 10/22/2015 1:35:16 PM

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
☒ Complaint ☐ Writ of Summons ☐ Petition
☐ Transfer from Another Jurisdiction ☐ Declaration of Taking

| Lead Plaintiff's Name: WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA | Lead Defendant's Name: ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDREW T. FANELLI |
|---|---|
| **Are money damages requested?** ☐ Yes ☒ No | Dollar Amount Requested: (Check one) ☐ within arbitration limits ☒ outside arbitration limits |
| **Is this a Class Action Suit?** ☐ Yes ☒ No | **Is this an MDJ Appeal?** ☐ Yes ☒ No |

Name of Plaintiff/Appellant's Attorney: PETER WAPNER, Esq., Id. No.318263, Phelan Hallinan Diamond & Jones, LLP

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE.* If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
☐ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☐ Premises Liability
☐ Product Liability *(does not include mass tort)*
☐ Slander/Libel/ Defamation
☐ Other:

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort - DES
☐ Toxic Tort - Implant
☐ Toxic Waste
☐ Other:

**PROFESSIONAL LIABILITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional:

**CONTRACT** (*do not include Judgments*)
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☐ Debt Collection: Other

☐ Employment Dispute: Discrimination
☐ Employment Dispute: Other

☐ Other:

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☒ Mortgage Foreclosure: Residential
☐ Mortgage Foreclosure: Commercial
☐ Partition
☐ Quiet Title
☐ Other:

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Statutory Appeal: Other

☐ Zoning Board
☐ Other:

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☐ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations Restraining Order
☐ Quo Warranto
☐ Replevin
☐ Other:

COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA
Plaintiff

vs.

ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDREW T. FANELLI
ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI
THE UNITED STATES OF AMERICA C/O THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF PA
Defendants

No.

**CERTIFICATION REGARDING STATUS OF FORECLOSED PREMISES AS RESIDENTIAL AND OWNER OCCUPIED**

Pursuant to the Administrative Order dated June 5, 2009 dealing with the Residential Mortgage Foreclosure Diversion Program, I hereby certify that the premises at issue in this action known and numbered as:

Premises Address: 5981 ATKINSON ROAD
NEW HOPE, PA 18938-5301

Check applicable box or boxes:

☒ is an owner occupied residential premises exposed to judicial sale to enforce a residential mortgage.

☐ is not a residential premises within the meaning of the aforementioned order.

The undersigned verifies that the statements made herein are true and correct. I understand that false statements are made subject to penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date: OCT 20 2015

PETER WAPNER, Esq., Id. No.318263
Attorney for Plaintiff

# URGENT NOTICE

**Under a new Pilot Project of the Court of Common Pleas of Bucks County**

## You May be Able to Get Help to Save Your Home

## Call the Save Your Home Hotline
## Immediately at
## 1-866-760-8911

**You will be put in touch with a Bucks County Housing Counselor. The Housing Counselor will assist you in trying to work out arrangements with your mortgage company. These services are FREE OF CHARGE.**

**Furthermore, if you are low income, you may be able to get free legal counsel. If you think you might be eligible, call the legal services helpline at 877-429-5994.**

**To get help, you must call the Hotline number above within the next TEN (10) days. They will tell you what to do next. Call the Hotline immediately. If you do not call the hotline, you will not be able to get help under this Project to save your home.**

# MAKE THIS CALL TO
# SAVE YOUR HOME.
# THE PROJECT IS FREE.
# 1-866-760-8911

COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA
Plaintiff : No.

vs.

ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDREW T. FANELLI
ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI
THE UNITED STATES OF AMERICA C/O THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF PA
Defendants

**CERTIFICATE OF SERVICE**

The undersigned verifies, subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities, that the attached Certification and Urgent notice were mailed to the Defendant(s) at their last known address and, if different, to the address of the premises subject to sale and to counsel of record if any, and to the owners of the noted premises via first class mail, as noted below:

ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDREW T. FANELLI
ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI
5981 ATKINSON ROAD
NEW HOPE, PA 18938-5301

ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDREW T. FANELLI
5981 ATKINSON RD
NEW HOPE, PA 18938

Date: 10/20/14

PETER WAPNER, Esq., Id. No.318263
Attorney for Plaintiff

**NOTICE**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Notice to Defend:
Lawyer Referral Service of the Bucks County Bar
Association
135 East State Street
P.O. Box 300
Doylestown, PA 18901
Telephone (215) 348-9413

File #: 972864

PHELAN HALLINAN DIAMOND & JONES, LLP
PETER WAPNER, Esq., Id. No.318263
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
peter.wapner@phelanhallinan.com
215-563-7000

ATTORNEY FOR PLAINTIFF

**IN THE COURT OF COMMON PLEAS OF**
**BUCKS COUNTY, PENNSYLVANIA**

WELLS FARGO BANK, NA, SUCCESSOR BY
MERGER TO WACHOVIA BANK, NA
3476 STATEVIEW BOULEVARD
FORT MILL, SC 29715
Plaintiff,

CIVIL DIVISION

NO.:

Case #: 2015-07310 B09 11016449
Code: 60 Judge:26
Patricia L. Bachtle, Bucks County Prothonotary
Rcpt: 2015-22-03554 10/22/2015 1:35:16 PM

vs.

ANDREW FANELLI A/K/A ANDREW T. FANELLI
A/K/A DR. ANDREW T. FANELLI
5981 ATKINSON ROAD
NEW HOPE, PA 18938-5301

ANGELA S. FANELLI A/K/A ANGELA FANELLI
A/K/A ANGELA SANDRA FANELLI
5981 ATKINSON ROAD
NEW HOPE, PA 18938-5301

THE UNITED STATES OF AMERICA C/O THE
UNITED STATES ATTORNEY FOR THE EASTERN
DISTRICT OF PA
615 CHESTNUT STREET, SUITE 1250
PHILADELPHIA, PA 19106-4404

Defendants.

## CIVIL ACTION - COMPLAINT IN MORTGAGE FORECLOSURE

And now comes WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA, by its attorneys, Phelan Hallinan Diamond & Jones, LLP and files this Complaint in Mortgage Foreclosure as follows:

1. The Plaintiff is WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA, 3476 STATEVIEW BOULEVARD, FORT MILL, SC 29715 (hereinafter "plaintiff").

2. The Defendants are, ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDREW T. FANELLI and ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI, with a last known address of 5981 ATKINSON ROAD, NEW HOPE, PA 18938-5301.

3. The Defendant is, THE UNITED STATES OF AMERICA C/O THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF PA, with a last known address of 615 CHESTNUT STREET, SUITE 1250, PHILADELPHIA, PA 19106-4404.

4. In order to protect the borrower's privacy, certain personal information of the borrower (such as loan account, Social Security numbers and birth dates), may have been partially or completely redacted on the exhibits to this Complaint.

5. WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA, directly or through an agent, has possession of the Promissory Note. WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA is either the original payee of the Promissory Note or the Promissory Note has been duly indorsed. A copy of said Promissory Note is marked Exhibit "A", attached hereto and made a part hereof.

6. On or about October 31, 2005, ANDREW FANELLI and ANGELA S. FANELLI made, executed and delivered to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,

INC. AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION a Mortgage in the original principal amount of $1,820,000.00 on the premises described in the legal description marked Exhibit "B", attached hereto and made a part hereof. Said Mortgage being recorded in the Office of the Recorder of BUCKS County on November 21, 2005, in Book 4720, Page 942. The Mortgage is a matter of public record and is incorporated herein by reference in accordance with Pa.R.C.P. 1019(g), which rule relieves the Plaintiff from its obligation to attach documents to pleadings if those documents are of public record.

7. Plaintiff is the current Mortgagee. By Assignment of Mortgage recorded April 4, 2012, the mortgage was assigned to WELLS FARGO BANK, NA which Assignment is recorded in the Office of the Recorder of BUCKS County in Book 6987, Page 1231. The Assignment is a matter of public record and is incorporated herein by reference in accordance with Pa.R.C.P. 1019(g), which rule relieves the Plaintiff from its obligation to attach documents to pleadings if those documents are of public record.

8. ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDREW T. FANELLI and ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI are the record and real owners of the aforesaid mortgaged premises.

9. Defendants are in default under the terms of the aforesaid Mortgage for, inter alia, failure to pay the installments of principal and interest due April 1, 2015.

10. As of 10/13/2015 the amount due and owing Plaintiff on the mortgage is as follows:

| | |
|---|---|
| Principal | $ 1,819,471.70 |
| Interest | |
| From 03/01/2015 to 10/13/2015 | $ 72,876.47 |
| Late Charges | $ 2,463.85 |
| Escrow Advance | $ 0.00 |
| Property Inspections | $ 0.00 |
| Property Preservation | $ 0.00 |
| BPO/Appraisal | $ 0.00 |
| Escrow Balance | $ 0.00 |
| Corporate Advance Credit | $ 0.00 |
| Total | $ 1,894,812.02 |

plus interest and all other additional amounts authorized under the Mortgage and Pennsylvania Law, actually and reasonably incurred by Plaintiff, including but not limited to, costs (including escrow advances) and Plaintiff's attorneys' fees and expenses. Plaintiff reserves the right to file a motion in the above-captioned action to add such additional sums authorized under the Mortgage and Pennsylvania Law to the above amount due and owing when incurred.

11. Notice of Intention to Foreclose as set forth in Act 6 of 1974, Notice of Homeowner's Emergency Mortgage Assistance Program pursuant to Act 91 of 1983, as amended in 2008, and/or Notice of Default as required by the mortgage document, as applicable, have been sent to the Defendant(s).

12. The United States of America is made a Defendant herein pursuant to 28 U.S.C. 2410, because of federal tax liens that have been filed with the Prothonotary of BUCKS County in the Judgment Index Unit as follows:

(A). United States vs. ANDREW FANELLI, A/K/A ANDREW T. FANELLI, A/K/A DR. ANDREW T. FANELLI, ANGELA S. FANELLI, A/K/A ANGELA FANELLI, A/K/A ANGELA SANDRA FANELLI; BUCKS County Docket No. 2011-20781; Filed 04/29/2011; in the amount of $236,905.40

(B). United States vs. ANDREW FANELLI, A/K/A ANDREW T. FANELLI, A/K/A DR. ANDREW T. FANELLI, ANGELA S. FANELLI, A/K/A ANGELA FANELLI, A/K/A ANGELA SANDRA FANELLI; BUCKS County Docket No. 2011-21661; Filed 11/14/2011; in the amount of $462,663.00

(C). United States vs. ANDREW FANELLI, A/K/A ANDREW T. FANELLI, A/K/A DR. ANDREW T. FANELLI, ANGELA S. FANELLI, A/K/A ANGELA FANELLI, A/K/A ANGELA SANDRA FANELLI; BUCKS County Docket No. 2013-20745; Filed 09/03/2013; in the amount of $122,134.46

13. This is an *in rem* action only against the aforesaid mortgaged premises. Plaintiff is not seeking a judgment of personal liability against the Defendant(s), but reserves its right to do so in a separate legal action if such right exists. If Defendant(s) have received a discharge of personal liability in a bankruptcy proceeding, this action is in no way an attempt to re-establish such liability.

WHEREFORE, Plaintiff demands an *in rem* judgment in mortgage foreclosure for the amount due of $ 1,894,812.02 with interest thereon plus additional costs (including additional escrow advances), additional attorneys' fees and costs and for foreclosure and sale of the mortgaged premises.

Date: 10/20/

By: ______________________
PETER WAPNER, Esq., Id. No.318263
Attorney for Plaintiff

**VERIFICATION**

Denise Goldston, hereby states that he/she is Vice President Loan Documentation of WELLS FARGO BANK, N.A., plaintiff in this matter, that he/she is authorized to make this Verification, and verify that the statements made in the foregoing Civil Action in Mortgage Foreclosure are true and correct to the best of his/her information and belief. The undersigned understands that this statement is made subject to the penalties of 18 Pa. C.S. Sec. 4904 relating to unsworn falsification to authorities.

Denise Goldston

Name: Denise Goldston
Title: Vice President Loan Documentation
Company: Wells Fargo Bank, N.A.
Date: 10/16/15

A

# Exhibit "A"

[redacted]

# FIXED/ADJUSTABLE RATE NOTE

**(LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)**

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October 31, 2005 KING OF PRUSSIA PENNSYLVANIA
[City] [State]

5981 ATKINSON ROAD NEW HOPE, PA 18938
[Property Address]

[redacted]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 1,820,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is WACHOVIA MORTGAGE CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest a yearly rate of 6.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and aft any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on January 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1100 CORPORATE CENTER DRIVE RALEIGH, NC 27607-5066 or at a different place if required by the Note Holder.



AJ

[redacted]

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 11503.64 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of December , 2015, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One Fourth percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.



AJ

[redacted]

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest .

I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.



AJ

[redacted]

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without



AJ

[redacted]

Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

ANDREW T FANELLI ........................ (Seal)
-Borrower

........................ (Seal)
-Borrower

........................ (Seal)
-Borrower

........................ (Seal)
-Borrower

[Sign Original Only]

PAY TO THE ORDER OF

WACHOVIA BANK, NATIONAL ASSOCIATION

WITHOUT RECOURSE
WACHOVIA MORTGAGE CORPORATION
BY: ____________
Assistant Vice President
KAREN DAVIS

PAY TO THE ORDER OF

____________

WITHOUT RECOURSE
WACHOVIA BANK, NATIONAL ASSOCIATION
BY: ____________
Assistant Vice President
KAREN DAVIS



AJ

PAY TO THE ORDER OF

WITHOUT RECOURSE
WACHOVIA BANK NATIONAL ASSOCIATION
BY: ____________
Assistant Vice President
KAREN DAVIS

PAY TO THE ORDER OF
WACHOVIA BANK NATIONAL ASSOCIATION

WITHOUT RECOURSE
WACHOVIA MORTGAGE CORPORATION
BY: ____________
Assistant Vice President
KAREN DAVIS

[redacted]

# ADDENDUM TO NOTE FOR INTEREST ONLY PAYMENTS

THIS ADDENDUM TO NOTE FOR INTEREST ONLY PAYMENTS is made this 31st day of October, 2005, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower,,), in favor of WACHOVIA MORTGAGE CORPORATION ("Lender,,) and dated the same date as this Addendum (the "Note,,). The Note is secured by a security instrument, as modified or amended, in favor of Lender dated the 31st day of October, 2005 (the "Security Instrument,,).

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

A. PAYMENTS: Section 3 (A) and Section 3(B) of the Nde are amended as follows:

3. PAYMENTS

(A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first 120 months, and thereafter will consist of principal and interest.

I will make my monthly payment on the first day of each month beginning on January 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest it will be applied to interest before principal. If, on December 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date.,,

I will make my monthly payments at 1100 CORPORATE CENTER DRIVE RALEIGH, NC 27607-5066 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 9,858.33. This amount may change.

B. INTEREST RATE AND MONTHLY PAYMENT CHANGES: Section 4 (C) of the Note is amended as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One Fourth percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

[redacted]

The Note Holder will then determine the amount of the monthly payment, which during the first 120 months of my loan will be the interest on the amounts actually outstanding and unpaid on the first day of the preceding month at my new interest rate, and thereafter will consist of principal and interest in an amount sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**C. BORROWER'S FAILURE TO PAY AS REQUIRED:** Section 7(A) of the Note is amended as follows and Section 7(F) is appended:

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(F) Termination of Interest Only Payments**

Upon default, the Note Holder, at its option, may require me to immediately begin making payments of principal and interest as stated in Sections 3 and 4 of the Note and in an amount sufficient to pay the outstanding balance in full on the stated Maturity Date. If the Note Holder elects this option, the Note Holder will deliver or mail a written notice to me of the new monthly payment at least 30 days prior to the due date of the new monthly payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) ANDREW T FANELLI - Borrower | _____ (Seal) -Borrower |
| _____ (Seal) - Borrower | _____ (Seal) -Borrower |
| _____ (Seal) | _____ (Seal) |

*[Sign Original Only]*

B

# Exhibit "B"

# LEGAL DESCRIPTION

ALL THAT CERTAIN lot, tract or parcel of land, situate, lying & being in the Township of Solebury, County of Bucks, & Commonwealth of Penna, being known & designated as Lot #5, as shown on a Plan of Aintree Subdivisions Numbered 2-552, Sheet 1 of 1, prepared by Christian & Moran, Inc., Engineers & Surveyors, Langhorne, Penna., dated 10/25/1979, revised 4/29/1980, recorded in the Office for the Recording of Deeds etc, in Doylestown, Penna. in Plan Book 196 page 4 & being more particularly bounded & described as follows, to wit:

BEGINNING at a point in the centerline of Atkinson Road (33 feet wide), said point being the 3 following courses & distances measured along the said centerline from its intersection with the centerline of Pidcock Creek Road (33 feet wide), (A) North 59 degrees 34 minutes 01 seconds West 279.86 feet, (b) South 72 degrees 26 minutes 53 seconds West 330.85 feet, (c) South 46 degrees 22 minutes 41 seconds West 523.77 feet, and from said point of beginning running thence (1) South 46 degrees 22 minutes 41 seconds West 476.46 feet along the said centerline of Atkinson Road to a point, thence (2) North 51 degrees 16 minutes 24 seconds West 892.10 feet along the Northeasterly line of Lot #10 as shown on the aforesaid plan to a point, thence (3) continuing by Lot #10, North 38 degrees 50 minutes 00 seconds East 472.22 feet to a point in line of Lot #4 on said plan, thence (4) by Lot #4, South 51 degrees 16 minutes 24 seconds East 954.66 feet to the centerline of Atkinson Road to the first mentioned point & place of Beginning.

CONTAINING 10,0100 Acres of land, more or less.

BEING Lot #5 as shown on the above-mentioned Plan.

File #: 972864

COUNTY TAX PARCEL #41-35-8-5.

BEING THE SAME PREMISES which Deluca Enterprises, Inc., A Pennsylvania Corporation, by Indenture dated 10-12-89 and recorded 10-24-89 in the Office of the Recorder of Deeds in and for the County of Bucks in Deed Book 107 Page 1628, granted and conveyed unto Andrew Fanelli and Angela Fanelli, his wife, as tenants by the entireties.

**PROPERTY ADDRESS: 5981 ATKINSON ROAD, NEW HOPE, PA 18938-5301**

**PARCEL #41-035-008-005**

File #: 972864

**ORDER FOR SERVICE**

Date: October 20, 2015

Prothy. No.

TO: SHERIFF OF BUCKS COUNTY

FROM:

PHELAN HALLINAN DIAMOND & JONES, LLP
/attorneyName/
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103

WRIT AND/OR
COMPLAINT - Mortgage Foreclosure
ASSUMPSIT
TRESPASS
EQUITY
DIVORCE

WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA
**Plaintiff**

vs.

ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDEREW T. FANELLI
ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI
THE UNITED STATES OF AMERICA C/O THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF PA
**Defendant(s)**

**SERVE:** (If R.D. Address must include specific instructions, also must have Apt. Number and Apt. Bldg. Number)

ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDEREW T. FANELLI
5981 ATKINSON ROAD
NEW HOPE, PA 18938-5301

**SPECIAL INSTRUCTIONS:** (Use other side if necessary)

**SERVICE WAS NOT MADE BECAUSE**

SD-50

5M-10-13-76

**ORDER FOR SERVICE**

Date: October 20, 2015

Prothy. No.

TO: SHERIFF OF BUCKS COUNTY

FROM:

PHELAN HALLINAN DIAMOND & JONES, LLP
/attorneyName/
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103

WRIT AND/OR
COMPLAINT - Mortgage Foreclosure
ASSUMPSIT
TRESPASS
EQUITY
DIVORCE

WELLS FARGO BANK, NA, SUCCESSOR BY MERGER TO WACHOVIA BANK, NA
**Plaintiff**

vs.

ANDREW FANELLI A/K/A ANDREW T. FANELLI A/K/A DR. ANDEREW T. FANELLI
ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI
THE UNITED STATES OF AMERICA C/O THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF PA
**Defendant(s)**

**SERVE**: (If R.D. Address must include specific instructions, also must have Apt. Number and Apt. Bldg. Number)

ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI
5981 ATKINSON ROAD
NEW HOPE, PA 18938-5301

**SPECIAL INSTRUCTIONS**: (Use other side if necessary)

**SERVICE WAS NOT MADE BECAUSE**

SD-50

5M-10-13-76

# Exhibit "D"

Case# 2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: DANA MARKS, ESQ.

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**

| | |
|---|---|
| WELLS FARGO BANK NA<br>U S BANK NATIONAL ASSOCIATION<br>U S BANK TRUST NATIONAL ASSOCIATION<br>vs.<br>ANDREW FANELLI<br>ANGELA S FANELLI<br>UNITED STATES OF AMERICA | **NO. 2015-07310** |

NOTICE UNDER PA R.C.P. 236 IS GIVEN THAT A JUDGMENT IN THE ABOVE CAPTIONED MATTER HAS BEEN ENTERED AGAINST YOU.

Coleen Christian

PROTHONOTARY

IF YOU HAVE ANY QUESTIONS CONCERNING THE ABOVE, PLEASE CONTACT:

ORIGINAL SIGNATURE RETAINED BY THE FILING PARTY
Signature

DANA MARKS, ESQ.
Filing Party

205165
ID Number

FREIDMAN VARTOLO LLP
Firm Name

1325 FRANKLIN AVE, SUITE 160
Address

GARDEN CITY, NY 11530

212-471-5100
Phone

*Case# 2016-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.*
*E-Filed by: DANA MARKS, ESQ.*

Case# 2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently then non-confidential information and documents.
E-Filed by: DANA MARKS, ESQ.

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**

| | |
|---|---|
| WELLS FARGO BANK NA<br>U S BANK NATIONAL ASSOCIATION<br>U S BANK TRUST NATIONAL ASSOCIATION<br>vs.<br>ANDREW FANELLI<br>ANGELA S FANELLI<br>UNITED STATES OF AMERICA | **NO. 2015-07310** |

## JUDGMENT ON THE ORDER

Judgment entered in favor of U S BANK TRUST NATIONAL ASSOCIATION and against ANGELA S FANELLI for the sum of 1,819,471.70 on the Order dated 01/25/2021.

I hereby certify that a copy of this Praecipe has been mailed to each party who has appeared in the action or to their attorney of record.

ORIGINAL SIGNATURE RETAINED BY THE FILING PARTY
Signature

DANA MARKS, ESQ.
Filing Party

205165
ID Number

FREIDMAN VARTOLO LLP
Firm Name

1325 FRANKLIN AVE, SUITE 160
Address

GARDEN CITY, NY 11530

212-471-5100
Phone

Judgment is entered in favor of U S BANK TRUST NATIONAL ASSOCIATION and against ANGELA S FANELLI on Order.

Coleen Christian
PROTHONOTARY

See attached
1-26-21

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST,

Plaintiff,

vs.

[redacted] a/k/a ANGELA FANELLI a/k/a ANGELA SANDRA FANELLI and THE UNITED STATES OF AMERICA C/O THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF PENNSYLVANIA,

Defendants.

No. 2015-07310

Case # 2015-07310-0054 12768718
Main (Public)
Code: 144 Judge:34
Rcpt Z2433708 1/27/2021 11:11:22 AM

**ORDER**

AND NOW, this 25th day of January, 2021, upon consideration of Plaintiff's Motion for [redacted] and Defendant's response thereto, it is hereby ORDERED and DECREED that Plaintiff's Motion is GRANTED in mortgage foreclosure, and judgment [redacted] shall be entered in favor of Plaintiff against Defendant in the amount of [redacted] together with interest and all other additional amounts authorized under Pennsylvania law, actually and reasonably incurred by Plaintiff, including but not limited to, costs (including escrow advances) and Plaintiff's attorneys' fees and expenses.

BY THE COURT:

WALLACE H. BATEMAN, JR., P.J.

THIS ORDER/JUDGMENT WAS DOCKETED AND SENT ON 01/27/2021 PURSUANT TO PA. R. C. P. 236.

Case# 2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: DANA MARKS, ESQ.

Case# 2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: DANA MARKS, ESQ.

**Dana Marks, Esq.**
Attorney ID Number: 205165
**FRIEDMAN VARTOLO LLP**
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case No.: 181992-2

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST,

Plaintiff

vs.

ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI; UNITED STATES OF AMERICA C/O THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF PA

Defendants.

NO.: 2015-07310

CIVIL ACTION

MORTGAGE FORECLOSURE

## AFFIDAVIT OF NON-MILITARY SERVICE

The undersigned counsel has performed a search of the records maintained by the Department of Defense, Defense Manpower Data Center, and states that, upon information and belief, the Defendants are not in the Military or Naval Service of the United States or its Allies, or otherwise within the provisions of the Servicemembers Civil Relief Act, as amended.

This statement is made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

Date: March 6, 2023

/s/ Dana Marks

**Dana Marks, Esq.**
FRIEDMAN VARTOLO LLP
Attorney for Plaintiff
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
(T) (212) 471-5100
(F) (212) 471-5150

2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: DANA S, ESQ.

# Status Report
# Pursuant to Servicemembers Civil Relief Act

SSN: [redacted]

Birth Date:

Last Name: FANELLI

First Name: ANGELA

Middle Name:

Status As Of: Mar-07-2023

Certificate ID: [redacted]

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligi Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other elig bility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly knov the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by DANA ..., ESQ.

Case# 2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: DANA MARKS, ESQ.

**Dana Marks, Esq.**
Attorney ID Number: 205165
FRIEDMAN VARTOLO LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case No.: 181992-2

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST,

Plaintiff

vs.

ANGELA S. FANELLI A/K/A ANGELA FANELLI A/K/A ANGELA SANDRA FANELLI; UNITED STATES OF AMERICA C/O THE UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF PA

Defendants.

NO.: 2015-07310

CIVIL ACTION

MORTGAGE FORECLOSURE

**NOTICE**

Pursuant to the requirements of Pennsylvania Rule of Civil Procedure 236 of the Supreme Court of Pennsylvania, you are hereby notified that a Judgment has been entered against you in the above-captioned proceeding as indicated below.

_____ Judgment by Default
_____ Money Judgment
_____ Judgment in Replevin
_____ Judgment for Possession
_____ Judgment in Award of Arbitration
_____ Judgment on Verdict
__X__ Judgment on Court Findings (Appended Court Order)

SERVICE LIST:

Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli
5981 Atkinson Road
New Hope, PA 18938

Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli
c/o Paul, Flandreau & Berger, LLP
320 West Front Street
Media, PA 19063

United States of America c/o The United States Attorney for the Eastern District of PA
700 Grant Street
Suite 700
Pittsburgh, PA 15219

Case# 2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: DANA MARKS, ESQ.

Case# 2015-07310-68 - JUDGE:34 Received at County of Bucks Prothonotary on 03/07/2023 11:47 AM, Fee = $24.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: DANA MARKS, ESQ.

***Copies sent to:***

KENYA DENEEN BATES, Esq.
PHELAN HALLINAN LLP
1617 JFK BLVD STE 1400
PHILADELPHIA, PA 19103

KEVIN J CUMMINGS, Esq.
TUCKER ARENSBERG, P.C.
1500 ONE PPG PLACE
PITTSBURGH, PA 15222

Timothy Allan Berger, Esq.
PAUL, FLANDREAU & BERGER LLP
320 W. FRONT STREET
MEDIA, PA 19063

CAITLYN M CUTTITTA, Esq.
PAUL FLANDREAU & BERGER LLP
320 W FRONT STREET
MEDIA, PA 19063

UNITED STATES OF AMERICA
615 CHESTNUT STREET SUITE 1250
PHILA, PA 19106-4404

# Exhibit "E"

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: ANGELA FANELLI | : | CHAPTER 13 |
| | : | |
| | : | |
| DEBTOR | : | Bankruptcy No. 24-11226AMC |

**MOTION TO CONVERT CASE FROM CHAPTER 13 TO CHAPTER 11**

Debtor, Angela Fanelli, through her attorney, Zachary Perlick, Esquire, hereby moves to convert her Chapter 13 case to a case under Chapter 11, and sets forth in support thereof the following:

1. Debtor filed a voluntary Chapter 13 Petition on April 11, 2024.

2. The deadline to file claims has passed.

3. The claims filed in the case exceed the Chapter 13 limit and the debtor wishes to convert her case to Chapter 11.

4. Debtor is searching for replacement counsel experienced in Chapter 11 cases and expects to complete her search prior to the hearing on this motion.

Wherefore, Debtor request that her Motion to Convert to Chapter 11 be GRANTED.

Respectfully submitted,

/Zachary Perlick, Esquire/

ZACHARY PERLICK, ESQUIRE
1420 Walnut Street, Suite 718
Philadelphia, PA 19102
(215) 569-2922

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | |
| Angela S. Fanelli, | : Chapter 13 |
| | : |
| Debtor. | : Case No. 25-11840-DJB |
| | : Hearing Date: October 23, 2025 at 11:00AM |
| | : |

**MOTION TO DISMISS CHAPTER 13 CASE PURUSANT TO 11 U.S. C. 109(e )**

Kenneth E. West, Esquire, Chapter 13 Standing Trustee, (hereinafter "Trustee"), by and through his attorney, respectfully requests that this Honorable Court dismiss this Chapter 13 Case for the following reasons:

1. On May 9, 2025, the Debtor filed the instant Chapter 13 case.

2. At all times relevant, pursuant to 11 U.S.C. § 109(e), an individual qualifies for Chapter 13 relief only if his debts do not exceed a certain sum at the time of filing: Only an individual with regular income that owes, on the date of the filing of the petition, non-contingent, liquidated debts of less than $526,700.00 and non-contingent, liquidated secured debts of less than 1,395,875.00 may be a debtor under chapter 13.

3. Liquidated debts that are disputed are included in the determination of the debt limit. See In re Saunders, 440 B.R. 336 (Bankr.E.D. Pa. 2006); Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 303-05 (2nd Cir. 1997); United States v. Verdunn, 89 F.3d 799, 802 n. 9 (11th Cir. 1996); Barcal v. Laughlin (In re Barcal), 213 B.R. 1008, 1012 (8th Cir. B.A.P. 1997); Gaertner v. McGarry (In re McGarry), 230 B.R. 272, 275 (Bankr.W.D. Pa. 1999); In re Pennypacker, 115 B.R. 504, 505 (E.D. Pa. 1990).

4. A noncontingent debt is one where "all events giving rise to the liability for the debt occurred prior to the debtor's filing for bankruptcy." In re Weiss ,251 B.R. 453, 465 (Bankr.E.D.Pa. 2000)(quoting In re Fostvedt, 823 F.2d 305, 306 (9th Cir.1987)) (quoting In

re Mazzeo, 131 F.3d 295, 303 (2d Cir.1997)). A debt is liquidated if "the value of the claim is easily ascertainable." Id.

5. The concept of a liquidated debt relates to the amount of the debt, not to the existence of liability. Verdunn, 89 F.3d at 802. That a dispute might exist about the underlying liability or the amount of the debt does not render the debt contingent or unliquidated. Id. at 802, n. 9. Rather, a debt is liquidated if the amount due can be determined with sufficient precision. Typically, debts of a contractual nature are liquidated, even if they are disputed. Pennypacker, 115 B.R. at 505.

6. As noted by the district court in In re Sullivan, 245 B.R. 416, 418 (N.D. Fla. 1999), the eligibility requirements of § 109(e) are based on what a debtor owes on the filing date, not what the debtor may think he owes. Courts specifically look at proofs of claim as well as a debtor's schedules to determine chapter 13 eligibility. See Verdun, *supra* (proof of claim reviewed to determine total unsecured claims); In re Gibson, 2017 Bankr. Lexis 1273 (Bankr.E.D. Pa. 2017) (per Coleman, J.)

7. For the purpose of determining eligibility for a Chapter 13, the amount of debt should not be reduced by the value of any potential counterclaim asserted by the debtor. Sylvester v. Dow Jones & Co. (In re Sylvester),19 B.R. 671, 673 (9th Cir. BAP 1982). See also Quintana v. Comm'r (In re Quintana), 915 F.2d 513, 517 (9th Cir. 1990) (holding that debtors may not use a counterclaim to set off the amount of a debt for Chapter 12 eligibility purposes)

8. To date, the claims register reflects debtor has secured debts in the amount of $2,985,497.45 and unsecured debts in the amount of $655,040.86 for a total of $3,640,538.31. See the Claims Register attached hereto as Exhibit "A".

9. Because the total amount of the Debtor's liquidated non-contingent debts exceed the debt limits allowed to be eligible to be in a Chapter 13 case, this case should be dismissed. 11 U.S.C. §109(e). See also In re Wilkins, 564 B.R. 268 (Bankr.M.D. Pa. 2017) (case converted

because debtor over the debt limit) In re Saunders, 440 B.R. 336 (Bankr.E.D. Pa. 2006)(debtors do not qualify for Chapter 13 bankruptcy because they are over the debt limit).

**WHEREFORE,** the Chapter 13 Trustee respectfully requests this Honorable Court dismiss the Debtor's Chapter 13 case.

Respectfully submitted:

Date: September 23, 2025

*/s/LeeAne O. Huggins*
LeeAne O. Huggins, Esquire
Kenneth E. West, Esquire.
Standing Chapter 13 Trustee
190 N. Independence Mall West
Suite 701
Philadelphia, PA 19106
Telephone: (215) 627-1373

# Exhibit "F"

# STATEMENT OF CLAIMS BEING COLLECTED BY PORTNOFF LAW ASSOCIATE

2700 Horizon Drive, Suite 100
King of Prussia, PA 19406

**Fax:** (484) 690-9305
**Email:** payoffs@portnoffonline.com

**Requested By:** SN Servicing Corporation
**Attention:** Lyn Berti
**Prepared By:** Erica R. Martin

**Good Through: July 31, 2026**
**Sent To:** lberti@snsc.com
**Requester Reference:**

**Parcel No.:** 41-035-008-005
**Address:** 5981 Atkinson Road, Solebury Township, PA
**Owner:** Fanelli, Angela

**Provided:**
**Provided:**
**Provided:**

**Please make the $25 statement fee payable to Portnoff Law Associates.**

| Year and Type of Claim | Docket Nos. | Balance Due | File No. |
|---|---|---|---|
| **Claims due New Hope-Solebury School District** | | | |
| 2023 school real estate taxes | 2024-72616, 2026-03859 | 38,458.48 | 24-23737-0 |
| 2024 school real estate taxes | 2025-70382, 2026-03859 | 37,254.95 | 25-04147-0 |
| 2025 school real estate taxes | N/A | 34,562.47 | 26-03380-0 |

Above is information concerning all active or paid claims that Portnoff Law Associates has identified for the above property as of **July 1, 2026**. A full list of the types of claims and years we currently collect on behalf of each of our clients is available on our website at https://www.portnoffonline.com/titleinsurancefirms/.

Please make payable to Portnoff Law Associates with our file no(s). listed on the payment. The Total Due includes fees, costs, and interest accrued through **July 1, 2026**. Portnoff Law Associates will honor the amounts listed herein as payment in full for the above delinquencies if paid by the Good Through Date.

**TOTAL DUE: 110,275.90**

**Good Through: July 31, 2026**

The County Tax Claim Bureau certifies all paid and outstanding property taxes collected under the Real Estate Tax Sale Law. Portnoff Law Associates provides information only for delinquent property taxes and municipal claims collected under the Municipal Claims and Tax Liens Act. Please check with the Tax Claim Bureau to determine if there are amounts due in addition to those set forth in this statement.

Please contact the relevant municipality, school district, county, authority, or tax collector for any other taxes or municipal claims that may be due, including, but not limited to, real estate taxes, water, sewer, trash, abatement of nuisance, and other special assessments.

The information contained in this message is confidential and intended only for the use of the requester. If you have received this communication in error: (1) please immediately notify us; (2) please return the original statement to us; and (3) any dissemination, distribution, or copying of this statement is strictly prohibited.

Balance due is valid for today only. If you have questions, please call the Bucks County Tax Claim Bureau office at **215-348-6274** or email to **taxclaimnotices@buckscounty.org**. This is not a tax certificate and is not for use in real estate transactions.

## Property Information

**Parcel Number**
41-035-008-005

**Alternate Map Number**

**Tax Year**
2026

**Site Address**
5981 ATKINSON RD
NEW HOPE, PA 18938

**Owner Name & Address**
FANELLI, ANDREW & ANGELA
5981 ATKINSON RD
NEW HOPE, PA 18938

**Property Class**
1050 - 1050

**Tax Code**
41

**Tax Status**
Taxable

**Map Number**

**Legal Description**
10.01A LOT #5 AINTREE

## Delinquent Taxes

| Tax Year | Due | Paid | Total Due |
|---|---|---|---|
| 2025 | $14,989.45 | $0.00 | $14,989.45 |
| 2024 | $15,995.65 | $0.00 | $15,995.65 |
| | | **Total** | **$30,985.10** |

Pay Taxes

## Assessments

**Annual Billing**

| | Land | Building | Mineral | Total | Pref. Land | Pref. Building | Pref. Total |
|---|---|---|---|---|---|---|---|
| Non-Exempt | 32,400 | 218,780 | 0 | **251,180** | 0 | 0 | **0** |
| Exempt | 0 | 0 | 0 | **0** | 0 | 0 | **0** |
| **Total** | **32,400** | **218,780** | **0** | **251,180** | **0** | **0** | **0** |

### Disclaimer

If you would like to pay a delinquent tax bill to avoid a Tax Sale, please call the Tax Claim Bureau at **215-348-6274** during regular business hours for any questions about making payments.

**Monday - Friday, 8:15 AM - 4:15 PM**
Closed on Holidays

© 2026 DEVNET, Inc
Data updated: 2026-02-27 17:15:00
wEdge Version: 5.1.9391.20935
Assembly Date: 2025/09/17

# Exhibit "G"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Debtor<br><br>Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli<br>Co-Debtor<br><br>SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust<br>v.<br>Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli<br>Kenneth E. West<br>Respondents | CASE NO.: 24-11226-amc<br><br>CHAPTER 13<br><br>Judge: Ashely M. Chan |

**AMENDED SETTLEMENT STIPULATION – *IN REM* MOTION FOR RELIEF**

WHEREAS, on April 11, 2024, Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli (the "Debtor") filed a Petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania;

WHEREAS, on May 22, 2024, SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust (the "Creditor") filed a ***In-Rem*** Motion for Relief from Automatic Stay pursuant to 11 U.S.C. Section 362(a) (the "Motion") regarding the Property located at 5981 Atkinson Road, New Hope, PA 18938 (the "Property");

WHEREAS, Creditor and Debtor are desirous of settling the dispute among and between themselves;

NOW THEREFORE, each in consideration of the promises of the other and intending to be legally bound, subject to the approval of the Bankruptcy Court, it is hereby agreed by and among counsel for Creditor, by and through its attorneys, Friedman Vartolo, LLP, and Debtor, by and through his/her counsel, Zachary Perlick, Esquire, as follows:

1. The parties hereby certify that the post-petition arrearage is **$27,288.33** consisting of the following:

| | |
|---|---|
| Post-Petition Payments: | $25,013.98– 5/1/2024 through 6/1/2024 at $12,506.99 / mo. |
| Late Charges: | $625.35 |
| Motion Fees/Costs: | $1,649.00 |
| **Total Post-Petition Arrears:** | **$27,288.33** |

2. On or before June 30, 2024, Debtor shall make a lump sum payment to Movant in the amount of $12,506.99, representing one post-petition payment, thereby reducing the post-petition arrearage to **$14,781.34.**

3. Within twenty (20) days of the approval of this Stipulation, Debtor shall file an Amended Plan providing for the post-petition arrears of **$14,781.34** as set forth in Paragraph 1.

4. Upon the filing of the Amended Plan, Creditor shall file an Amended Claim providing for the post-petition arrears of **$14,781.34** as set forth in Paragraph 1

5. Commencing on July 1, 2024, Debtor shall maintain regular monthly post-petition mortgage payments in the amount of **$12,506.99.**

6. Commencing on November 1, 2024, Debtor shall make monthly payments directly to Creditor in the amount of **$1,572.02** as reimbursement for the Force-Placed Insurance which Creditor maintains on the Property. This amount may adjust with the rate of insurance premiums.

7. Within sixty (60) days of the entry of this Stipulation, Debtor must obtain his/her own insurance policy on the Property, which adequately provides for Creditor in accordance with the loan documents.

8. Should Debtor fail to comply with any of the terms of this Stipulation, including but not limited to failure to make the above described payments, or any regular monthly mortgage payment commencing after the cure of the post-petition arrearage, or any Force-Placed Insurance reimbursement payments, then Creditor may send Debtor and counsel for Debtor a written notice of default of this Stipulation. If the default is not cured within ten (10) days of the date of said notice, counsel for Creditor may file a Certification of Default with the Court. Said Certification of Default may include a certification of Debtor's failure to pay subsequent payments that fall due after the date of the notice of default. Upon Certification, the Court shall enter an Order granting ***In-Rem*** relief from the automatic stay as to the Property.

9. In the event that Debtor converts his/her case to Chapter 11, the terms of this Stipulation shall remain in full force and effect. In the event that Debtor converts his/her case to Chapter 7, Debtor shall cure all pre-petition and post-petition arrears within ten (10) days of the date of conversion. Failure to cure the arrears shall constitute an event of default under this Stipulation and Creditor may send a notice of default and certify default as set forth in the preceding paragraph.

10. The Debtor agrees that any Order granting relief from the automatic stay will include a waiver of Rule 4001(a)(3) and that Creditor, its successors and/or assigns may act upon the Order immediately.

11. If the instant bankruptcy is dismissed, this Stipulation shall be void and shall not be binding upon the parties.

12. Attorney fees and costs for issuing a notice to cure, notice/certificate/affidavit of default, and order for relief are recoverable and may be added to the arrearage.

13. The provisions of this Stipulation do not constitute a waiver by Creditor of its right to seek reimbursement of any amount(s) not included in the instant Stipulation, including fees and costs, due under the terms of the mortgage and applicable law.

14. Counsel for Debtor has authority to settle this matter on behalf of his/her client(s).

Date: November 19, 2024

/s/ Lauren M. Moyer
Lauren M. Moyer, Esquire
Friedman Vartolo, LLP
*Counsel for Creditor*

Date: November 19, 2024

/s/ Zachary Perlick
Zachary Perlick, Esquire
*Counsel for Debtor*

No Objection - Without Prejudice to Any Trustee Rights or Remedies

Date: November 30, 2024

/s/ LeeAne O. Huggins
Kenneth E. West, Trustee
*Chapter 13 Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | Angela S. Fanelli a/k/a Angela Fanelli<br>a/k/a Angela Sandra Fanelli<br>Debtor | CASE NO.: 24-11226-amc |
| | | CHAPTER 13 |
| | Andrew Fanelli a/k/a Andrew T. Fanelli<br>a/k/a Dr. Andrew T. Fanelli<br>Co-Debtor | Judge: Ashely M. Chan |
| | SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust<br>v.<br>Angela S. Fanelli a/k/a Angela Fanelli<br>a/k/a Angela Sandra Fanelli<br>Andrew Fanelli a/k/a Andrew T. Fanelli<br>a/k/a Dr. Andrew T. Fanelli<br>Kenneth E. West<br>Respondents | |

**ORDER APPRO IN AMENDED SETTLEMENT STIPULATION**

AND NOW, this _______ day of ______________________, 2024, it is hereby ORDERED and DECREED that the Amended Settlement Stipulation resolving Creditor, SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust's ***In-Rem*** Motion for Relief from Automatic Stay is hereby APPROVED.

BY THE COURT:

**Date: December 19, 2024**

______________________________
Ashely M. Chan,
Chief Bankruptcy Judge

# Exhibit "H"

Silverman & Company

File No.

## APPRAISAL OF



## LOCATED AT:

5981 Atkinson Road
New Hope, PA 18938

## CLIENT:

U.S. Bank Trust National Assoc.
323 Fifth Street
Eureka, CA, 95501

## AS OF:

July 29, 2025

Silverman & Company

File No.

U.S. Bank Trust National Assoc.
323 Fifth Street
Eureka, CA, 95501

File Number:

In accordance with your request, I have appraised the real property at:

5981 Atkinson Road
New Hope, PA 18938

The purpose of this appraisal is to develop an opinion of the defined value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the defined value of the property as of July 29, 2025 is:

$2,750,000
Two Million Seven Hundred Fifty Thousand Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, assignment conditions and appropriate certifications.

Craig S. Silverman
State Certified Residential Real Estate Appraiser

Silverman & Company

# Summary Residential Appraisal Report

File No.

**PURPOSE**

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

Client Name/Intended User U.S. Bank Trust National Assoc. E-mail aviale@snsc.com

Client Address 323 Fifth Street City Eureka State CA Zip 95501

Additional Intended User(s) There are no other identified intended users identified.

Intended Use Internal Financial Planning

**SUBJECT**

Property Address 5981 Atkinson Road City New Hope State PA Zip 18938

Owner of Public Record Andrew & Angela Fanelli County Bucks

Legal Description Book/Page-107/1628

Assessor's Parcel # 41-035-008-005 Tax Year 2025 R.E. Taxes $ 42,508.00

Neighborhood Name Solebury Township Map Reference Tax Map-035-008-005 Census Tract 1043.041

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

**SALES HISTORY**

My research [ ] did [x] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Prior Sale/Transfer: Date 10/24/1989 Price $1,795,100 Source(s) Realist

Analysis of prior sale or transfer history of the subject property (and comparable sales, if applicable) As noted above, the subject last sold on 10/24/1989 for $1,795,100.

Offerings, options and contracts as of the effective date of the appraisal No offerings, options or contracts have been noted. The subject was most recently listed for sale on 12/31/2023 (listing expiration date) for $2,325,000.

**NEIGHBORHOOD**

| Neighborhood Characteristics | | | | One-Unit Housing Trends | | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban | [X] Suburban | [ ] Rural | Property Values | [ ] Increasing | [X] Stable | [ ] Declining | PRICE $(000) | | AGE (yrs) | One-Unit | 65 % |
| Built-Up | [ ] Over 75% | [X] 25-75% | [ ] Under 25% | Demand/Supply | [X] Shortage | [ ] In Balance | [ ] Over Supply | 185 | Low | 0 | 2-4 Unit | % |
| Growth | [ ] Rapid | [X] Stable | [ ] Slow | Marketing Time | [X] Under 3 mths | [ ] 3-6 mths | [ ] Over 6 mths | 8,400 | High | 300 | Multi-Family | % |
| | | | | | | | | 950 | Pred. | 45 | Commercial | 5 % |
| | | | | | | | | | | | Other Wd/Ag | 30 % |

Neighborhood Boundaries The neighborhood boundaries are defined by Street Road to South, Delaware River to North, Carversville Road to West and Lurgan Road to East.

Neighborhood Description See Attached Addendum

Market Conditions (including support for the above conclusions) See Attached Addendum

**SITE**

Dimensions Obtain Legal Description Area 10.01 Acres Shape Irregular View N;Res;

Specific Zoning Classification RB Zoning Description Residential

Zoning Compliance [x] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [x] Yes [ ] No If No, describe. See Attached Addendum

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | [ ] | Water | [ ] | [x] well water | Street Macadam | [x] | [ ] |
| Gas | [ ] | [X] Oil | Sanitary Sewer | [ ] | [x] septic system | Alley None | [ ] | [ ] |

Site Comments Typical area site with all public utilities available and connected except public water and sewer and natural gas. Normal utility and phone easements of record with no apparent adverse encroachments. On site water and sewer appears to be common to the subject neighborhood and appear to function adequately at time of inspection. The subject also has oil heat for back-up.

**IMPROVEMENTS**

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials | | INTERIOR materials | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit [ ] | | [ ] Concrete Slab [ ] Crawl Space | | Foundation Walls | Concrete | Floors | Carpet/Marble/O |
| # of Stories 2.5 | | [x] Full Basement [ ] Partial Basement | | Exterior Walls | Brick/Vinyl | Walls | Drywall |
| Type [x] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area | 4400 sq. ft. | Roof Surface | Slate Shingle | Trim/Finish | Wood |
| [x] Existing [ ] Proposed [ ] Under Const. | | Basement Finish | 0 % | Gutters & Downspouts | Aluminum | Bath Floor | Ceramic |
| Design (Style) Colonial | | [ ] Outside Entry/Exit [x] Sump Pump | | Window Type | Dbl-Hung | Bath Wainscot | Ceramic |
| Year Built 1989 | | | | Storm Sash/Insulated | Insulated Glass | Car Storage | [ ] None |
| Effective Age (Yrs) 20 | | | | Screens | Yes | [x] Driveway | # of Cars 10+ |
| Attic | [ ] None | Heating [ ] FWA [ ] HW [ ] Radiant | | Amenities | [ ] WoodStove(s) # | Driveway Surface | Macadam |
| [ ] Drop Stair | [ ] Stairs | [x] Other HP | Fuel Elec | [x] Fireplace(s) # 4 | [ ] Fence | [x] Garage | # of Cars 3 |
| [x] Floor | [ ] Scuttle | Cooling [x] Central Air Conditioning | | [x] Patio/Deck | [x] Porch | [ ] Carport | # of Cars |

Silverman & Company

## Summary Residential Appraisal Report

File No.

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO | |
|---|---|---|---|---|---|---|---|
| Address | 5981 Atkinson Road New Hope | 2155 Aquetong Road New Hope, PA 18938 | | 170 Buckmanville Road New Hope, PA 18938 | | 2810 Windy Bush Road Newtown, PA 18940 | |
| Proximity to Subject | | 1.11 miles NE | | 1.29 miles SE | | 2.25 miles SW | |
| Sale Price | $ | | $ 4,500,000 | | $ 2,905,000 | | $ 2,900,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 586.85 sq. ft. | | $ 315.80 sq. ft. | | $ 370.28 sq. ft. | |
| Data Source(s) | | Bright#PABU2065924;DOM 1 | | Bright#PABU2094474;DOM 20 | | Bright#PABU2070314;DOM 118 | |
| Verification Source(s) | | Realist/Appr.File | | Realist | | Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | ArmLnth Conv;0 | | ArmLnth Cash;0 | | ArmLnth Cash;0 | |
| Date of Sale/Time | | 04/26/2024 | | 06/13/2025 | | 11/15/2024 | |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10.01 Acres | 13.52 Acres | 0 | 10 Acres | 0 | 6.03 Acres | 0 |
| View | N;Res; | Res/Farms/Wood | | Res/Pond/Woods | | N;Res;Wooded | |
| Design (Style) | Colonial | French Colonial | | Colonial | | Colonial | |
| Quality of Construction | Average | Good | | Average | | Average | |
| Actual Age | 36+/- | 22+/- | | 38+/- | | 18+/- | |
| Condition | Average | Superior | -1,000,000 | Average | | Average | |
| Above Grade Room Count (Total / Bdrms. / Baths) | 17 / 6 / 5.2 | 15 / 5 / 5.2 | 0 | 14 / 6 / 4.2 | 20,000 | 15 / 7 / 6.2 | -20,000 |
| Gross Living Area 100.00 | 10,264 sq. ft. | 7,668 sq. ft. | 259,600 | 9,199 sq. ft. | 106,500 | 7,832 sq. ft. | 243,200 |
| Basement & Finished Rooms Below Grade | Full Unfinished | Full Part-Finished | -100,000 | Full Part-Finished | -100,000 | Full Part-Finished | -100,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | HP C/Air | Prop/FWA C/Air | | Oil/FWA C/Air | | Prop/FWA C/Air | |
| Energy Efficient Items | Insul. Glass | Insul. Glass | | Insul. Glass | | Insul. Glass | |
| Garage/Carport | 3 Car Garage | 7 Car Garage | -80,000 | 6 Car Garage | -60,000 | 5 Car Garage | -40,000 |
| Porch/Patio/Deck | Patio/Porch/4FP | Patios/5FP | 0 | Pch/Pats/Decks/2FP | 0 | ScnrPch/Pats/4FP | 0 |
| Add'l Features | As noted | Superior (adjabv) | 0 | Similar Features | | Similar Features | 0 |
| Add'l Features | No Pool | Ingr.Pool | -75,000 | Ingr.Pool | -75,000 | Ingr.Pool | -75,000 |
| | | None | | Det Aprtmnt/Tennis | -150,000 | In-law ste/barn | -150,000 |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 995,400 | ☐ + ☒ - | $ 258,500 | ☐ + ☒ - | $ 141,800 |
| Adjusted Sale Price of Comparables | | Net Adj. -22.1% Gross Adj. 33.7% | $ 3,504,600 | Net Adj. -8.9% Gross Adj. 17.6% | $ 2,646,500 | Net Adj. -4.9% Gross Adj. 21.7% | $ 2,758,200 |

Summary of Sales Comparison Approach The subject property is located within Solebury Township and New Hope-Solebury school district. My initial search parameters revealed 10 homes within this municipality and school district that have closed (and been listed) in the last 12 month period. After the initial results have been analyzed for relevance, I then manually reviewed every single sale and listing to determine which properties are most similar to the subject with regards to location, style, gross living area and lot size, condition and bedroom & bathroom count, as well as other desirable amenities, placing additional emphasis on the most proximate and recent of these sales and listings. The best possible data is presented in this appraisal report, with market adjustments applied as warranted, and values reconciled to determine my final opinion of market value.

### COST APPROACH TO VALUE

Site Value Comments

ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW

Source of cost data

Quality rating from cost service Effective date of cost data

Comments on Cost Approach (gross living area calculations, depreciation, etc.)

| | |
|---|---|
| OPINION OF SITE VALUE = $ | |
| Dwelling 10,264 Sq. Ft. @$ = $ | 0 |
| Bsmt: 4400 Sq.Ft. Sq. Ft. @$ = $ | 0 |
| Garage/Carport Sq. Ft. @$ = $ | |
| Total Estimate of Cost-New = $ | 0 |
| Less Physical / Functional / External Depreciation = $( | 0) |
| Depreciated Cost of Improvements = $ | 0 |
| "As-is" Value of Site Improvements = $ | |
| INDICATED VALUE BY COST APPROACH = $ | 0 |

### INCOME APPROACH TO VALUE

Estimated Monthly Market Rent $ X Gross Rent Multiplier = $ Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

Methods and techniques employed: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach ☐ Other:

Silverman & Company

# Summary Residential Appraisal Report

File No.

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 5981 Atkinson Road New Hope | 5965 Pidcock Creek Road New Hope, PA 18938 | | 6068 Stoney Hill Road New Hope, PA 18938 | | 233 Lurgan Road New Hope, PA 18938 | |
| Proximity to Subject | | 0.42 miles NW | | 1.00 miles NW | | 0.94 miles SE | |
| Sale Price | $ | | $ 5,650,000 | | $ 4,250,000 | | $ 3,400,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 578.30 sq. ft. | | $ 821.26 sq. ft. | | $ 347.86 sq. ft. | |
| Data Source(s) | | Bright#PABU2061158;DOM 2 | | Bright#PABU2092262;DOM 104 | | Bright#PABU2098072;DOM 46 | |
| Verification Source(s) | | Realist/Appr.File | | Realist | | Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | ArmLnth Cash;0 | | Listing | | Listing | |
| Date of Sale/Time | | 08/29/2024 | | Active | | Active | |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10.01 Acres | 2.64 Acres | 0 | 10.93 Acres | 0 | 13.5 Acres | 0 |
| View | N;Res; | Res/Farms/Wood | | B;Wooded;Pond | | N;Res;Farms | |
| Design (Style) | Colonial | French Colonial | | Manor | | Manor | |
| Quality of Construction | Average | Good | | Average | | Average | |
| Actual Age | 36+/- | 15+/- | | 40+/- | | 22+/- | |
| Condition | Average | Superior | -1,000,000 | Good | -500,000 | Good | -500,000 |
| Above Grade Room Count (Total / Bdrms. / Baths) | 17 / 6 / 5.2 | 10 / 4 / 4.1 | 30,000 | 10 / 3 / 2.1 | 70,000 | 11 / 5 / 6.2 | -20,000 |
| Gross Living Area 100.00 | 10,264 sq. ft. | 9,770 sq. ft. | 49,400 | 5,175 sq. ft. | 508,900 | 9,774 sq. ft. | 49,000 |
| Basement & Finished Rooms Below Grade | Full Unfinished | Full Unfinished | | Full Part-Finished | -100,000 | Full Part-Finished | -100,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | HP C/Air | Gas/FWA C/Air | | Oil/Rad C/Air | | Elec HP-Rad C/Air | |
| Energy Efficient Items | Insul. Glass | Insul. Glass | | Insul. Glass | | Insul. Glass | |
| Garage/Carport | 3 Car Garage | 3 Car Garage | | 3 Car Garage | | 5 Car Garage | -40,000 |
| Porch/Patio/Deck | Patio/Porch/4FP | Patios/Balc/3FP | 0 | Pch/Pats/2FP | 0 | Pch/ScrnPch/2FP | 0 |
| Add'l Features | As noted | Superior (adjabv) | 0 | SupCon-AdjAbv | 0 | SupCon-AdjAbv | 0 |
| Add'l Features | No Pool | Ingr.Pool | -75,000 | Ingr.Pool | -75,000 | Indoor Pool | -75,000 |
| | | None | | Guest Hse 5Br4Bath | -250,000 | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 995,600 | ☐ + ☒ - | $ 346,100 | ☐ + ☒ - | $ 686,000 |
| Adjusted Sale Price of Comparables | | Net Adj. -17.6% Gross Adj. 20.4% | $ 4,654,400 | Net Adj. -8.1% Gross Adj. 35.4% | $ 3,903,900 | Net Adj. -20.2% Gross Adj. 23.1% | $ 2,714,000 |

SALES COMPARISON APPROACH

Summary of Sales Comparison Approach

# Summary Residential Appraisal Report

File No.

## Scope of Work, Assumptions and Limiting Conditions

**Scope of work is defined in the Uniform Standards of Professional Appraisal Practice as " the type and extent of research and analyses in an assignment." In short, scope of work is simply what the appraiser did and did not do during the course of the assignment. It includes, but is not limited to: the extent to which the property is identified and inspected, the type and extent of data researched, the type and extent of analyses applied to arrive at opinions or conclusions.**

**The scope of this appraisal and ensuing discussion in this report are specific to the needs of the client, other identified intended users and to the intended use of the report. This report was prepared for the sole and exclusive use of the client and other identified intended users for the identified intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.**

**The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.**

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made thereto.

4. Neither all, nor any part of the content of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5. The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser.

7. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such.

8. The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar expert, unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to: foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested.

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

**Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.**

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9. Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10. Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage/use.

**11. The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).**

**Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions**

Silverman & Company

## Summary Residential Appraisal Report

File No:

### Appraiser's Certification

**The appraiser(s) certifies that, to the best of the appraiser's knowledge and belief:**

1. The statements of fact contained in this report are true and correct.
2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are the appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.
3. Unless otherwise stated, the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved.
4. The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
5. The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.
6. The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
7. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
8. Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report.
9. Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification. Significant real property appraisal assistance provided by:

**Additional Certifications:**

**Definition of Value:** [X] **Market Value** [ ] **Other Value:**

Source of Definition: See Below

See Attached Addendum

ADDRESS OF THE PROPERTY APPRAISED:

5981 Atkinson Road

New Hope, PA 18938

EFFECTIVE DATE OF THE APPRAISAL: 07/29/2025

APPRAISED VALUE OF THE SUBJECT PROPERTY $ 2,750,000

APPRAISER

SUPERVISORY APPRAISER

ADDENDUM

| | | |
|---|---|---|
| Client: U.S. Bank Trust National Assoc. | File No.: | |
| Property Address: 5981 Atkinson Road | Case No.: | |
| City: New Hope | State: PA | Zip: 18938 |

**NEIGHBORHOOD DESCRIPTION**

The subject property is located in a desirable township of Bucks County, known as Solebury. The area is rich in history dating back to the Colonial period of early America. The area proivdes convenient access to employment centers in Princeton, New Jersey, Trenton, New Jersey, New York City (approx 1hr. 15 min by train), and Center City Philadelphia. New Hope-Solebury school district is well regarded throughout the region. Access to area shopping is located within five miles in historic New Hope Borough, as well the Borough of Lahaska (Peddlers Village). Solebury Township has made a significant attempt to preserve the pristine landscape by passing two bond referrendums in the last two elections, which has created a Conservancy, and allows homeowners to register their properties, stating that these sites will not be developed, in return for tax relief.

**NEIGHBORHOOD MARKET CONDITIONS**

The subjects neighborhood exhibits adequate proximity to employment centers, shopping districts, schools, recreational facilities and police and fire protection services. Sales concessions and loan discounts are not unusual. Many financing programs are available to the home buyer which allow dwellings in the market to be more affordable and marketing times to be reasonable.

**HIGHEST AND BEST USE**

Highest & Best Use-The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible, and that results in the highest value.

Based on the above definition and an analysis of the subjects market and it's overall appeal and marketability within that market, the current use represents the highest and best use.

**COMMENTS ON SALES COMPARISON**

Comparables #1 and #4 were previously appraised by this appraiser.

Gross living area adjustments have been calculated at $100.00 per sq.ft.

Lot size adjustments have not been applied to the comparables in the Sales Comparison Approach. Area exceeding four acres has been considered "surplus land" for the purposes of this valuation. The definition of "surplus land", according to The Dictionary of Real Estate Appraisal, Fourth Edition is:

"Land not necessary to support the highest and best use of the existing improvement but, because of physical limitations, building placement, or neighborhood norms, cannot be sold off separately. Such land may or may not contribute positively to value and may or may not accomodate future expansion of an existing or anticipated improvement."

The subject neighborhood exhibits a wide range in values. The estimated value of the subject property is somewhat above the predominant value, but well within the range exhibited for the neighborhood. The comparable sales are all situated within the subjects immediate area, and demonstrate the marketability of homes in the subjects value range.

Due to a lack of recent relevant sales data in the subjects market area, it was necessary to extend our marketing time in our search for comparable sales data. The sales exhibited were sold under economic conditions which are similar to those which exist at the time of this appraisal on the subject property. Thus, no time adjustment is warranted. The sales data represented in this report was the best available market data, and after necessary adjustments provide good indicators of the subjects market value.

**Final Reconciliation**

The appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales, listing, and / or rentals within the subject market area. The original source of the comparable is shown in the Data Source of the market grid along with the source of confirmation, if available. The original source is presented first. The source and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report or used as a basis for the value conclusion.

Exposure Time

Under Paragraph 3 of the Definition of Market Value, the value opinion presumes that "A reasonable time is allowed for exposure in the open market". Exposure time is defined as the length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at

ADDENDUM

| | | |
|---|---|---|
| Client: U.S. Bank Trust National Assoc. | File No.: | |
| Property Address: 5981 Atkinson Road | Case No.: | |
| City: New Hope | State: PA | Zip: 18938 |

past events, assuming a competitive and open market. It assumes not only adequate, sufficient and reasonable time but adequate, sufficient and a reasonable marketing effort. Exposure time and conclusion of value are therefore interrelated. Based on our review of the subject's market, discussions with market participants and information gathered during the sales
verification process, a reasonable exposure time for the subject property at the value concluded within this report would have
been approximately 60-90 days. This assumes an active and professional marketing plan would have been employed by the current owner.

**CONDITIONS OF APPRAISAL**
The appraisal is made "as is" at time of inspection with no repairs, alterations or special conditions required.

The determination of an estimated market value involved a number of processes. After the problem was defined and the work planned, the subject was physically inspected on both the interior and exterior. Sales data was collected from several sources including town hall records, real estate brokers and multiple listing service. When applicable, the Marshall and Swift Residential Cost Handbook has been consulted to estimate reproduction costs. A report of these findings will be included as an attachment to this appraisal.

Items of personal property had no impact on the determination of the appraised value of the subject property.

This appraisal report contains an electronic signature.

**Definition of Value**
The definition of "Market Value", as defined by the Office of the Comptroller of Currency (OCC) under 12 CFR, Part 34, Subpart C
Appraisals,
34.42 Definitions, the Board of Governors of the Federal Reserve System (FRS) and the Federal Deposit Insurance Corporation in compliance with Title XI of FIRREA, as well as by the Uniform Standards of Appraisal Practice as promulgated by the
Appraisal Foundation is as follows;
Market value means the most probable price which a property should bring in a competitive and open market under all conditions
requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by
undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to
buyer under conditions whereby,
1. Buyer and seller are typically motivated;
2. Both parties are will informed or well advised, and acting in what they consider their own best interest;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Comparable amenities:

170 Buckmanville Road - Porch, patios, decks, 2 fireplaces, inground pool, gazebo, tennis court, 2 bedroom carriage house

2810 Windy Bush Road - 4 fireplaces, patios, built-in bbq, scrn porch, inground pool, barn, generator, in-law wing. Main home is four bedrooms, attached in-law/au-pair/guest is three bedrooms.

6068 Stoney Hill Road - 2 fireplaces, patios, porch, inground pool, 750 SF pool house (kitchenette, one bedroom, two bathrooms), tennis court, sauna, 2290 SF guest house with five bedrooms and four bathrooms.

233 Lurgan Road - 2 fireplaces, porch, screened porch, indoor pool, pavillion with kitchenette, generator, apartment above

# DIMENSION LIST ADDENDUM

| | | | |
|---|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: | |
| Property Address: 5981 Atkinson Road | | Case No.: | |
| City: New Hope | State: PA | | Zip: 18938 |

| GROSS BUILDING AREA (GBA) | 10,264 | | |
|---|---|---|---|
| GROSS LIVING AREA (GLA) | 10,264 | | |
| **Area(s)** | **Area** | **% of GLA** | **% of GBA** |
| Living | 10,264 | | 100.00 |
| Level 1 | 4,400 | 42.87 | 42.87 |
| Level 2 | 5,144 | 50.12 | 50.12 |
| Level 3 | 720 | 7.01 | 7.01 |
| Other | | | |
| Basement (GBA ☐) | | | |
| Garage (GBA ☐) | | | |
| ☐ | | | |

| Area Measurements | | | | | | | Area Type | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Measurements | | | | Factor | | Total | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
| 36.00 | x | 22.00 | x | 1.00 | = | 792.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 32.00 | x | 16.00 | x | 1.00 | = | 512.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 52.00 | x | 20.00 | x | 1.00 | = | 1,040.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 42.00 | x | 36.00 | x | 1.00 | = | 1,512.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 16.00 | x | 4.00 | x | 1.00 | = | 64.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 30.00 | x | 16.00 | x | 1.00 | = | 480.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 16.00 | x | 4.00 | x | 1.00 | = | 64.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 36.00 | x | 22.00 | x | 1.00 | = | 792.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 32.00 | x | 16.00 | x | 1.00 | = | 512.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 56.00 | x | 40.00 | x | 1.00 | = | 2,240.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 12.00 | x | 10.00 | x | 1.00 | = | 120.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 28.00 | x | 16.00 | x | 1.00 | = | 448.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 44.00 | x | 22.00 | x | 1.00 | = | 968.00 | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| 36.00 | x | 20.00 | x | 1.00 | = | 720.00 | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

SUBJECT PHOTO ADDENDUM

| | | | |
|---|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: | |
| Property Address: 5981 Atkinson Road | | Case No.: | |
| City: New Hope | State: PA | Zip: 18938 | |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: July 29, 2025
Appraised Value: $2,750,000



**REAR VIEW OF SUBJECT PROPERTY**



**STREET SCENE**

| | | |
|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: |
| Property Address: 5981 Atkinson Road | | Case No.: |
| City: New Hope | State: PA | Zip: 18938 |



**COMPARABLE SALE #1**

2155 Aquetong Road
New Hope, PA 18938
Sale Date: 04/26/2024
Sale Price: $ 4,500,000



**COMPARABLE SALE #2**

170 Buckmanville Road
New Hope, PA 18938
Sale Date: 06/13/2025
Sale Price: $ 2,905,000



**COMPARABLE SALE #3**

2810 Windy Bush Road
Newtown, PA 18940
Sale Date: 11/15/2024

**COMPARABLE PROPERTY PHOTO ADDENDUM**

| | | | |
|---|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: | |
| Property Address: 5981 Atkinson Road | | Case No.: | |
| City: New Hope | State: PA | Zip: 18938 | |



**COMPARABLE SALE #4**

5965 Pidcock Creek Road
New Hope, PA 18938
Sale Date: 08/29/2024
Sale Price: $ 5,650,000



**COMPARABLE SALE #5**

6068 Stoney Hill Road
New Hope, PA 18938
Sale Date: Active
Sale Price: $ 4,250,000



**COMPARABLE SALE #6**

233 Lurgan Road
New Hope, PA 18938
Sale Date: Active

## FLOORPLAN SKETCH

| | | | |
|---|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: | |
| Property Address: 5981 Atkinson Road | | Case No.: | |
| City: New Hope | State: PA | | Zip: 18938 |



Sketch by Apex Sketch

**AREA CALCULATIONS SUMMARY**

| Code | Description | Factor | Net Size | Perimeter | Net Totals |
|---|---|---|---|---|---|
| GLA1 | First Floor | 1.0 | 4400.0 | 348.0 | 4400.0 |
| GLA2 | Second Floor | 1.0 | 5144.0 | 424.0 | 5144.0 |
| GLA3 | Third Floor | 1.0 | 720.0 | 112.0 | 720.0 |

**AREA CALCULATIONS BREAKDOWN**

| Name | Base x | Height x | Width = | Area |
|---|---|---|---|---|
| First Floor | | 36.0 x | 22.0 = | 792.0 |
| | | 32.0 x | 16.0 = | 512.0 |
| | | 52.0 x | 20.0 = | 1040.0 |
| | | 42.0 x | 36.0 = | 1512.0 |
| | | 16.0 x | 4.0 = | 64.0 |

**LOCATION MAP**

| | | | |
|---|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: | |
| Property Address: 5981 Atkinson Road | | Case No.: | |
| City: New Hope | State: PA | | Zip: 18938 |



| | | | |
|---|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: | |
| Property Address: 5981 Atkinson Road | | Case No.: | |
| City: New Hope | State: PA | | Zip: 18938 |

**Commonwealth of Pennsylvania- Department of State**
**Bureau of Professional and Occupational Affairs**

Mailing Address P.O. Box 2649, Harrisburg, PA 17105 Toll Free: 1-833-DOS-BPOA

**CRAIG SCOTT SILVERMAN**

| | | | |
|---|---|---|---|
| License Number | : RL001609R | Initial License Date : 08/25/1993 | Expiration Date : 06/30/2027 |
| License Type | : Certified Residential Appraiser | | License Status as of 5/2/2025 : Active |
| Issued By | : State Board of Certified Real Estate Appraisers | | |
| Address | : 105 S CONGRESS ST, NEWTOWN, PA 18940 | | |

Arion R. Claggett

Acting Commissioner Arion R. Claggett

Signature of Licensee

SCAN ME

Please verify the license by visiting https://www.pals.pa.gov/verify or by scanning the QR Code

202505012118

| | | | |
|---|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: | |
| Property Address: 5981 Atkinson Road | | Case No.: | |
| City: New Hope | State: PA | Zip: 18938 | |











**AERIAL MAP**

| | | | |
|---|---|---|---|
| Client: U.S. Bank Trust National Assoc. | | File No.: | |
| Property Address: 5981 Atkinson Road | | Case No.: | |
| City: New Hope | State: PA | | Zip: 18938 |



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Debtor | CASE NO.: 26-13385-djb<br><br>CHAPTER 13 |
| SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust<br>v. | Judge: Derek J Baker<br><br>Hearing Date: October 1, 2026, at 11:00 A.M.<br><br>Objection Deadline: September 8, 2026 |
| Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli<br>Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Kenneth E. West<br><br>Respondents | |

**ORDER**

**AND NOW**, this _____ day of __________ , 2025, upon the motion of SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust (hereafter "Movant")

**ORDERED AND DECREED** that Movant (and any assignee/successor-in-interest) is granted relief from the stay pursuant to 11 U.S.C. § 362(d)(4), for in rem relief from the automatic stay with respect to the real property 5981 Atkinson Road, New Hope, PA 18938; pursuant to 11 U.S.C. § 362 (d)(2); vacating the automatic stay to permit Movant, its successors and/or assigns, to enforce its mortgage on the Debtor's premises; vacating the co-debtor stay in effect pursuant to 11 U.S.C. § 1301(a); and it is

**ORDERED AND DECREED** that Movant is granted relief from the stay of 11 U.S.C. §362 to proceed with its mortgage foreclosure action and Sheriff's Sale (and all other rights under state and federal law) concerning the Property; and it is

**FURTHER ORDERED and DECREED** that automatic stay under 11 USC §362 with regard to the Property (and Debtor and any Co-Debtor) shall not arise as to Movant in this Bankruptcy or any other Bankruptcy filed within two years from the date the instant case is either dismissed or otherwise terminated; and it is

**FURTHER ORDERED and DECREED** that the Co-Debtor stay in effect as it pertains to Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli pursuant to section 1301(a) of the Bankruptcy Code is hereby modified to allow Movant its successors and/or assigns to commence and /or continue with a foreclose action and eviction proceeding with regard to the Premises; and it is further

**FURTHER ORDERED and DECREED** that Movant may record this Order in the same fashion as an interest or lien may be recorded under state law, pursuant to 11 USC §362(d)(4), and from the date of recording no automatic stay shall arise under any provision of the Bankruptcy Code as to Movant with regard to the Property and Debtor for a period of two years from the date of this Order; and it is

**FURTHER ORDERED and DECREED** that Movant is no longer required to send and/or file the Notices required by Fed. R. Bankr. P. 3002.1; and it is further

**FURTHER ORDERED and DECREED** that the 14-day stay pursuant to Rule 4001(a)(3) is hereby waived and Debtor will not be considered current with Movant at the conclusion of the instant case. The fees and costs set forth in this Motion shall be paid by Debtor and be due and payable under the terms of the Note and Mortgage.

**BY THE COURT:**

________________________________

**U.S.B.J.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Debtor<br><br>SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust<br>v.<br><br>Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli<br>Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli<br>Kenneth E. West<br>Respondents | CASE NO.: 26-13385-djb<br><br>CHAPTER 13<br><br>Judge: Derek J Baker<br><br>Hearing Date: October 1, 2026, at 11:00 A.M.<br><br>Objection Deadline: September 8, 2026 |

**CERTIFICATE OF SERVICE**

I, Lauren M. Moyer, Esq., certify that on August 25, 2026, I caused to be served a true copy of the annexed **NOTICE OF MOTION, MOTION FOR IN REM RELIEF FROM THE AUTOMATIC STAY, AND SUPPORTING DOCUMENTS**, electronically and by mailing by First Class Mail in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service addressed to the last known address of the addressee, and the property address as indicated on the attached Service List annexed hereto.

Dated: August 25, 2026

By: /s/ Lauren M. Moyer
Lauren M. Moyer, Esq.
**FRIEDMAN VARTOLO LLP**
Attorneys for SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of the Cabana Series III Trust
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Bankruptcy@FriedmanVartolo.com

**SERVICE LIST**

Angela S. Fanelli a/k/a Angela Fanelli a/k/a Angela Sandra Fanelli
5981 Atkinson Road
New Hope, PA 18938
Bankruptcy Pro Se Debtor

Andrew Fanelli a/k/a Andrew T. Fanelli a/k/a Dr. Andrew T. Fanelli
5981 Atkinson Road
New Hope, PA 18938
Bankruptcy Co-Debtor

Kenneth E. West
1234 Market Street , Suite 1813
Philadelphia, PA 19107
Bankruptcy Trustee

United States Trustee
Robert N.C. Nix Federal Building - Suite 320, 900 Market Street
Philadelphia, PA 19107
United States Trustee